**Patrick THOMPSON a/k/a Patrick Thompson–Sterling, Appellant,**

**v.**

**Shawn ANDERSON and Mail Boxes Etc., U.S.A., Inc., Appellees.**

No. S–4252.

Supreme Court of Alaska.

Jan. 24, 1992.

Lawrence A. Pederson, Paul J. Nangle & Associates, Anchorage, for appellant.

Terry C. Aglietti, Aglietti, Rodey & Offret, Anchorage, for appellee Mail Boxes Etc., U.S.A., Inc.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

# OPINION

MATTHEWS, Justice.

## INTRODUCTION

Patrick Thompson claims that Shawn Anderson and Mail Boxes, Inc. breached their contract and committed the tort of conversion. Thompson attempted to send a package from the Mail Boxes facility Anderson managed. Anderson alerted the Anchorage Police Department that the transaction appeared suspicious, then inspected the package and discovered it contained approximately $20,000. A police officer seized the package and it became evidence in Thompson's criminal prosecution. The superior court granted summary judgment in favor of Anderson and Mail Boxes. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 2, 1989, Investigator Cooper of the Anchorage Police Department contacted Shawn Anderson, an employee of Mail Boxes, Etc., a private mail drop facility, inquiring whether any persons fitting descriptions of suspected drug traffickers had recently used their services. He asked Anderson to notify him of any shipments made by "foreign persons who were dressed in flashy clothes, appeared to be carrying large amounts of cash or wore expensive jewelry and appeared to be Jamaican."[1] Later that day, Patrick Thompson, a black Jamaican, came to Anderson's Mail Boxes location and purchased two boxes. Anderson recognized his accent as Jamaican. Thompson was wearing an open shirt and a necklace with a gold medallion and was accompanied by another individual who appeared to be Jamaican. They told Anderson they would return later to send the boxes.

Thompson returned with a package to be shipped. Thompson filled out a Federal Express airbill and paid for the $45.50 charge using a fifty dollar bill pulled from a three-inch wad of bills. According to Anderson, Thompson "appear[ed] nervous" while in the store.

After Thompson left, Anderson learned that Federal Express' pickup deadline had passed and she called another carrier, DHL, to make other shipping arrangements for Thompson's package. She then called the phone number Thompson had written on the Federal Express airbill to get Thompson's approval for the change. The woman who answered the phone did not recognize Thompson's name, but when Anderson said it concerned a Federal Express package "she suddenly knew who [Anderson] was talking about" and said she would have Thompson call Mail Boxes.

Thompson agreed to the change and Anderson kept him on the phone while she filled out the DHL airbill. One of the questions contained on the DHL airbill asks for the contents of the package. Thompson said the package contained clothing. After scheduling a pickup with DHL, Anderson phoned Investigator Cooper and told him about the suspicious nature of the transaction. Cooper came to the store and shook the package and then had a dog sniff it. The dog did not respond. Cooper also showed Anderson several photographs and she identified the photo of Thompson as the person who had brought the package in. Cooper left and told Anderson to send the package if the DHL courier arrived.

Anderson called both DHL and Federal Express to determine whether she could open a package as their agent. Representatives from both companies said that she could.[2] A short time later, Cooper phoned and said that he had also done some checking and felt that Anderson could open the package. He then waited on the phone as Anderson opened the package, saw that it contained clothing and a large bundle of

---

1. According to Anderson, it is Mail Boxes' policy to call the police if any transaction looks suspicious.

2. Both the DHL and Federal Express airbills provide their agents with the right to open and reject any packages.

cash,[3] and resealed the package. Upon hearing of the contents, Cooper went to Mail Boxes and seized the package without a warrant.

Eventually, the United States charged Thompson with distributing cocaine. Thompson moved to suppress the package and its contents contending that the warrantless search and seizure of the box was unconstitutional. The federal magistrate ruled that Anderson's search of the box was private; the government's involvement was not so pervasive as to make Anderson an agent of the state and thus, the fourth amendment did not apply to her search of the box. The magistrate specifically found that "Anderson opened the package of her own independent choice and not at the direction or suggestion of Investigator Cooper." However, the magistrate concluded that Thompson's fourth amendment rights were violated by the government's comparison of the seized bills to bills known to have been used in drug transactions and the laboratory analysis of the money for drug residue. The magistrate recommended that the details concerning the seized money be suppressed. The magistrate did not expressly rule on whether the seizure of the package, by Cooper, as distinct from the examination of the money, was legal. However, he suggested implicitly that the seizure alone was legal, by concluding that it was the government's act of subjecting the bills to close analysis which was unlawful.[4]

The federal district court adopted the magistrate's conclusion that the search by Anderson was private. The court also adopted the magistrate's recommendations concerning Cooper's actions and ordered the suppression of evidence about the currency acquired following its seizure by Cooper. Thompson was, nonetheless, convicted of three counts of distributing cocaine.

In this action, Thompson seeks civil damages from Anderson and Mail Boxes alleging that Anderson's failure to prevent Officer Cooper from seizing the box constituted conversion and breach of contract.[5] Thompson seeks actual damages of $20,000 plus the value of clothing included in the package, punitive damages for "the wanton, willful, acts of conversion undertaken with reckless disregard of plaintiff's rights," and special damages since Thompson allegedly would have used the $20,000 to purchase a residence and was deprived of the opportunity by Anderson's actions.

All parties moved for summary judgment. The trial court granted Anderson's and Mail Boxes' motion, and denied that of Thompson. Thompson appeals.

## DISCUSSION

A conversion is "an intentional exercise of dominion or control of a chattel which so seriously interferes with a right of another to control it that the actor may be justly required to pay the other the full value of the chattel." *McKibben v. Mohawk Oil Co.*, 667 P.2d 1223, 1228 (Alaska 1983) (quoting RESTATEMENT (SECOND) OF TORTS § 222A (1965)). More concretely, delivery of property by a bailee to a third person who is not entitled to the property can be a form of conversion. "Perhaps the most common way that conversion is committed is by an unauthorized transfer or disposal of possession of the goods to one

3. Specifically the package contained $19,440. $800 of the bills matched previously recorded drug buy bills which were used in an April 17, 1989 purchase.

4. The magistrate's summary states:
   The search and seizure of the package by Shawn Anderson, manager for Mail Boxes Etc. USA, Inc. was a *private search without* sufficient governmental involvement to constitute state action and render applicable to the search the Fourth Amendment. A government agent's viewing of what a private party has freely made available for his inspection does not violate the Fourth Amendment.

*United States v. Jacobsen,* [466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)]. Investigator Cooper infringed the privacy interest of the package owner when he seized the package and went beyond the parameters of the private search without a warrant. Sterling still retained a privacy interest in whether the monies could be identified or associated with any known drug activity.

5. The breach of contract claim is not included in Thompson's complaint. He, however, argued this theory before the trial court, and Anderson has responded to it.

who is *not entitled* to them." W.P. Keeton, *Prosser and Keeton on Torts* § 15 at 96 (5th ed. 1984) (emphasis added).

Thompson argues that Officer Cooper was not legally entitled to possession of the package because he did not have a warrant. Thompson also argues the seizure did not fall within an exception to the warrant requirement.[6] Regardless of whether Cooper's seizure of the package was lawful, we hold that appellees are not liable for conversion.

■■■ Professor Keeton notes that a bailee is not liable for conversion when the bailee delivers property to "an officer armed with legal process." *Id.* at 97. We believe that this does not go far enough where property is delivered on the demand of a police officer or seized by an officer.[7] In our view, it should not be a tort for a bailee to obey the command of a police officer to turn over property in the bailee's possession. First, there are situations where an officer can lawfully seize property without a warrant. 2 W.R. LaFave, *Search and Seizure* § 4.1 at 118 (2d ed. 1987). Whether a seizure is lawful depends on what the policeman knows, not on the knowledge of the bailee. *See Id.,* Vol. 1 § 3.1(d) at 552.[8] Thus the bailee is in no position to judge the lawfulness of a warrantless seizure. Further, even if the bailee suspects or knows that a police seizure is unlawful, there is nothing, practically speaking, that she can do to prevent it.

To require a bailee to resist a police demand to turn over property would be to promote public disorder and potentially dangerous confrontations.

■■■ Thompson also claims that Anderson and Mail Boxes breached their contract by not shipping the package. Appellees have a clear defense to this claim, namely that DHL's airbill specifically states "DHL will not carry: currency" Since Thompson's package was not delivered because it contained currency, Anderson and Mail Boxes did not breach the contract.[9]

For these reasons the judgment is AFFIRMED.

---

6. As we noted earlier, the Federal Magistrate in Thompson's criminal trial did not expressly decide whether Cooper's seizure was lawful. For the reasons discussed below, we find it unnecessary to decide this issue.

7. Our holding does not apply to situations where the bailee has the option of not delivering the property to the police officer. As to that situation, we express no opinion. In the present case, the record does not show that Anderson voluntarily delivered the package to Officer Cooper. What the record indicates is that "Cooper ... seized the box," and that Cooper "took the package, opened it, counted the money that was in it, and left a receipt."

8. *See* Restatement (Second) of Torts § 243, comment b ('[A] bailee is not liable for conversion for failing to prevent a sheriff from seizing goods under process, even though the process may be entirely void.')

9. Thompson argues that he should not be bound by the terms of DHL's airbill because he "could not have seen ... DHL['s] ... list of unacceptable items because he was not physically at the Mail Boxes business" when Anderson filled out the DHL airbill. However, in the absence of misrepresentation, a party is bound by the terms of a standardized contract even if he neglects to read it, unless the unknown terms "are beyond the range of reasonable expectation." *Lauvetz v. Alaska Sales and Serv.,* —— P.2d ——, Op. No. 242 (Alaska, November 15, 1991) (quoting Restatement (Second) of Contracts § 211 at comment f (1981)); *see also* 3 A. Corbin, *Corbin on Contracts* § 607 (1960). In the present case, Anderson did not misrepresent the terms of DHL's airbill and DHL's limitation on items it will ship is not unreasonable. Moreover, Thompson could have visited Mail Boxes to read and personally complete DHL's airbill.