Perry D. JOHNSON, Appellant,

v.

Don P. JOHNSON, Kenneth Steinnerd,
and the City of Fairbanks,
Appellees.

No. S-5027.

Supreme Court of Alaska.

April 9, 1993.

Dick L. Madson, Paul W. English, Law
Offices of Dick L. Madson, Fairbanks, for
appellant.

Patrick B. Cole, Deputy City Atty., Fairbanks, for appellees.

Betsy O'Leary, Asst. U.S. Atty., Wevley William Shea, U.S. Atty., for the U.S. amicus curiae.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

BURKE, Justice.

### I. *INTRODUCTION*

Perry Johnson appeals the superior court's order and judgment dismissing his conversion claim against the City of Fairbanks ("City"). Fairbanks police officers obtained a search warrant to search Johnson's house. They seized drugs, drug paraphernalia, weapons and $44,850. The police transferred the money to the federal Drug Enforcement Administration ("DEA"). The DEA administratively forfeited the money and returned a portion to the Fairbanks police department. In Johnson's criminal case, the superior court suppressed all the evidence and ordered the state to return "any currency or its equivalent seized from the defendant and in the possession of the state." When the money was not returned, Johnson filed the present action. The superior court granted the City's summary judgment motion, determining that the DEA's "adoptive seizure" had deprived Johnson of his title to the money.

We declare the federal forfeiture void because the City's transfer of the money violated state law regarding the disposition of property held in connection with a criminal proceeding. We therefore reverse the judgment and direct the superior court to enter summary judgment in Johnson's favor.

### II. *FACTS AND PROCEEDINGS*

On February 1, 1990 Fairbanks police officers responded to a domestic violence call at the house of Perry Johnson. The officers arrested Johnson, placed him in the patrol car, and then entered his house, finding evidence of illegal narcotics activity. The police then obtained a warrant to search Johnson's house. As a result of the search, police seized and inventoried 75 items, including $44,850 in cash. A criminal complaint, based on information gathered during this search, was filed against Johnson on February 2.

On the same day, Fairbanks Police Officer Kenneth Steinnerd contacted DEA Special Agent Fred Thomas in Anchorage to discuss the case. Thomas told Steinnerd that the DEA would "adoptively seize" the money through a federal forfeiture proceeding. On the next working day, Steinnerd took the money to a bank, exchanged it for a cashier's check made payable to the U.S. Marshal's Office, and transferred the check to the custody of the U.S. Marshal.

On February 7 a grand jury returned a 14 count indictment against Johnson, charging him with misconduct involving weapons in the first degree, theft in the second degree, and misconduct involving a controlled substance in the fourth degree.

On April 2 the DEA commenced forfeiture proceedings. Johnson was notified of the proceeding by a certified letter but took no action to reclaim the money. Forfeiture of the money was accomplished administratively on May 17. The City of Fairbanks received $17,940 of the forfeited money in consideration for its participation.

Meanwhile, on April 5 Johnson moved the superior court to suppress and return the evidence seized under the search warrant, arguing that the police had no authority to search his house after they had arrested him. On May 7 Superior Court Judge Richard D. Savell granted Johnson's motion to suppress. Thereafter, the state dismissed the criminal charges against Johnson. On July 3, Judge Savell ordered the state to return the money to Johnson:

> The court does not decide the question of whether the federal court has jurisdiction over the subject matter of the currency seized pursuant to the search warrant; however, the court does have jurisdiction and does decide the matter between the parties before it. Consequently the state, its agents, or employees have no

claim and may make no further claim to the proceeds seized from the defendant. The state's right to possess the currency is hereby extinguished and therefore any currency or its equivalent seized from the defendant and in possession of the state or its agents or employees should be returned.[1]

On July 12 Johnson filed a complaint against the City. Johnson alleged that the transfer of currency constituted conversion and that he was denied access to the state courts. Johnson moved for summary judgment on his conversion claim. The City cross-moved for summary judgment. Judge Savell denied Johnson's motion and entered summary judgment for the City. Johnson appeals.

## III. *DISCUSSION*

■ The DEA instituted forfeiture proceedings against Johnson's money under the legal fiction of "adoptive seizure." Through informal arrangements, local police departments agree to notify the DEA when they seize property which may be subject to forfeiture pursuant to federal narcotics laws. Upon a DEA request, the local police department will transfer the property to the DEA, which will treat the property as if it had been seized by federal authorities. That is, the DEA will "adopt" the seizure. The DEA will then institute federal forfeiture proceedings against the property. Once the forfeiture is complete, the DEA is authorized to "split the pot" with the cooperating local police department. *See* 21 U.S.C. § 881(e)(1)(A) (1988).

■ The City argues that Johnson's conversion claim is barred by the "relation back doctrine." 21 U.S.C. § 881(h) provides,

All right, title, and interest in property described in subsection (a) of this section [which would include any money traceable to the use or exchange of controlled substances] shall vest in the United States upon commission of the act giving rise to forfeiture under this section.

Under the legal fiction of "relation back," property rights are divested "immediately at the moment such property is used in a manner or context prescribed by section 881, and not at some future time." *Eggleston v. Colorado*, 873 F.2d 242, 246 (10th Cir.1989), *cert. denied*, 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990). According to the City, Johnson lost his title and interest in the money before it was even seized. Thus, the City argues, Johnson has no conversion claim since, at the time the money was transferred to the DEA, he had no title to the property. As the City would have it, it simply "transferred the currency to the true owner, the United States."

■ This argument ignores a fundamental problem: By transferring the money without court approval, the City violated state law regarding the disposition of seized property. Alaska Statute 12.36.020 authorizes a law enforcement agency to return property to the owner if

(1) the property is not in custody in connection with ... a criminal proceeding ...; and

(2) the property in custody is not subject to forfeiture under the laws of the state.

The City attempts to justify the transfer here by arguing that, with the adoptive seizure and subsequent forfeiture, the DEA became the sole owner of the money. Thus, the City argues, the police properly returned the money to its rightful owner. However, at the time of the transfer, the money was in custody in connection with a criminal proceeding. Thus, the police could not "return" the money to the owner, regardless of who the owner might be. By transferring the money while it was still in the custody of the district court, the Fairbanks police department violated AS 12.36.-020.

■ The state may only transfer seized property to the DEA after it has completed forfeiture proceedings. The procedures for forfeiting seized property are set out in detail in AS 17.30.100–.130. Alaska Statute 17.30.114(b) states:

1. On December 12 Johnson filed a motion requesting the court to order the state to show cause why it had not returned the $44,850. Judge Savell denied the motion without comment.

Property taken or detained [in a forfeiture proceeding] shall be held in the custody of either the commissioner of public safety or a municipal law enforcement agency ... subject only to the orders and decrees of the court having jurisdiction over any forfeiture proceedings. If property is seized under this chapter, the commissioner of public safety or an authorized municipal law enforcement agency may

(1) place the property under seal;

(2) remove the property to a place designated by the court; or

(3) take custody of the property and remove it to an appropriate location for disposition in accordance with law.

The remaining sections of Chapter 30 describe the procedures for forfeiture and disposition of forfeited property. AS 17.-30.116–.130. *After the property has been forfeited,* it may be transferred "to another agency of the state or a political subdivision of the state for a use in furtherance of the administration of justice." AS 17.30.-122(3). It may also be "forward[ed] to the Drug Enforcement Administration of the United States Department of Justice for disposition." AS 17.30.122(5).

The City notes that AS 17.30.100 directs the commissioner of public safety to cooperate with state and federal agencies in suppressing the abuse of controlled substances. However, nothing in AS 17.30.100 entitles law enforcement agencies to circumvent either the requirements in AS 12.-36.020 regarding the return of seized property, or the detailed procedures found in AS 17.30.100–.130 for forfeiting and disposing of seized property.

The City does not directly address the question of whether state law prohibits police from unilaterally transferring property seized and held in connection with a criminal proceeding. Instead, it focuses on the fact that the DEA was the first to institute in rem proceedings against the property. By so doing, the City argues, the DEA obtained exclusive jurisdiction over the

property. *See Penn Gen. Casualty Co. v. Commonwealth of Pennsylvania ex rel. Schnader,* 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935) ("[T]he court first assuming jurisdiction over [ ] property may maintain and exercise that jurisdiction to the exclusion of the other.").

██ The City's position is that the issuance of the search warrant only created in personam jurisdiction. Since the state never instituted in rem forfeiture proceedings, it contends, the DEA's "adoptive seizure" effectively deprived the state court of any jurisdiction over the money. In other words, the DEA won the "race to the res." Johnson argues that, by issuing a search warrant, the state court obtained jurisdiction over the seized property. Therefore, the City had no authority to transfer the money to the DEA. It follows, he argues, that the DEA's forfeiture proceeding had no legal effect. Johnson has the better argument.

It is evident from a review of Chapters 35 and 36 of Title 12 of the Alaska Statutes that a search warrant is directed primarily against property. A search warrant is defined as a written order "directed to a peace officer, commanding the peace officer to search for personal property and bring it before the judge or magistrate." AS 12.35.120. Once the property is seized, the peace officer must inventory the property, and return the warrant and the inventory promptly to the court. AS 12.35.025. In the present case, the warrant commanded the peace officer to "bring the property before [the magistrate] within 10 days." Clearly, a search warrant is more than just a means of establishing in personam jurisdiction. It also enables a court to exercise jurisdiction over the property seized pursuant to it. It follows, then, that the state court in this case had jurisdiction over the money "to the exclusion" of the DEA as a result of the search warrant.[2]

We conclude that because the district court was the first to obtain jurisdiction over the property, and because the City's transfer violated state law, the DEA's for-

---

**2.** The Fifth Circuit Court of Appeals, in a forfeiture case with facts very similar to the facts of

the present case, reached the same conclusion we do today:

feiture had no effect. In other words, the money "was never out of the legal control of the state court and thus was never in the possession of the federal government." *Scarabin v. Drug Enforcement Admin.*, 966 F.2d 989, 995 (5th Cir.1992). It is as if the federal forfeiture never occurred. *Id.* at 993.

■ By unilaterally transferring the property without any authority and in contravention of state statutes, the City committed a conversion. As we recently stated, "[D]elivery of property by a bailee to a third person who is not entitled to the property can be a form of conversion. 'Perhaps the most common way that conversion is committed is by an unauthorized transfer or disposal of possession of the goods to one who is *not entitled* to them.'" *Thompson v. Anderson*, 824 P.2d 712, 714–15 (Alaska 1992) (emphasis in original) (quoting W. Page Keeton, ET AL., *Prosser & Keeton on the Law of Torts* § 15, at 96 (5th ed. 1984)). We conclude that the City is liable for the "full value" of the conversion. *Id.* at 714.[3]

REVERSED and REMANDED with instructions that summary judgment be entered in Johnson's favor.

[W]e [ ] conclude that the DEA lacked *in rem* jurisdiction to forfeit Scarabin's property. From the moment of seizure the state district court had exclusive control over the *res* by virtue of issuing the search warrant that procured the seized funds and never relinquished that control to the DEA or any other agency or person. A federal agency cannot obtain jurisdiction over the *res*—and thus cannot find the *res* administratively forfeit—when a state court obtains jurisdiction first and never relinquishes that jurisdiction. Here, Louisiana's statutory law, La.C.Cr.P. art. 167, clearly and unequivocally (employing the mandatory "shall") provides that the state court asserts control over items seized pursuant to its warrant:

When property is seized pursuant to a search warrant, it shall be retained under the direction of the judge. If seized property is not to be used as evidence or is no longer needed as evidence, it shall be disposed of according to law, under the direction of the judge.

Under art. 167, the state court's control terminates when, but only when, the seized property is disposed of according to law. Nothing in Louisiana's comprehensive forfeiture law indicates that forfeiture is an exception to art. 167, or that unsanctioned transfers by local police operate to defeat the state court's control over seized property.
*Scarabin v. Drug Enforcement Admin.*, 966 F.2d 989, 993–94 (5th Cir.1992) (footnote omitted).

3. We will not allow the City to hide behind the immunity statute, AS 09.65.070(d)(2), because to do so would allow the Fairbanks Police to continue to illegally transfer property with no recourse for aggrieved claimants. To argue that the City is shielded from liability because Steinnerd's transfer of Johnson's money to the DEA was a discretionary act is to miss the point of this opinion, which is that the Fairbanks police had no authority to transfer the money in the manner that they did.