In re the Matter of THE SEIZURE OF APPROXIMATELY 28 GRAMS OF MARIJUANA.

No. 3–01–30204 MHP.

United States District Court, N.D. California.

Aug. 25, 2003.

Mark T. Quinlivan, U.S. Department of Justice, Washington, DC.

J. Bryce Kenny, Russell J. Clanton & Associates, Arcata, CA.

Russell J. Clanton, Russell J. Clanton & Associates, Arcata, CA.

## OPINION

PATEL, Chief Judge.

This action arises out of the seizure of approximately twenty-eight grams of marijuana by the United States Drug Enforcement Agency ("DEA"), pursuant to a warrant issued by this court. Petitioner Christopher Giauque filed a motion for return of the marijuana, arguing that the seizure constituted improper interference by a federal court in state court proceedings and challenging the constitutionality of the federal drugs as applied to his own simple possession of marijuana for personal medical use. For the reasons set forth below, the court rules on Giauque's motion as follows.

## BACKGROUND

### I. Procedural History

On October 15, 1999, police arrested Christopher Giauque in Humboldt County and seized approximately twenty-eight grams of marijuana from his vehicle. Declaration in Support of Warrant of Arrest, Resp. Exh. 2. Giauque was charged with transporting marijuana; possessing marijuana while operating a motor vehicle; resisting, obstructing, and delaying an officer; and disturbing the peace. Criminal Complaint, Resp. Exh. 1. Pursuant to a negotiated plea, Giauque entered a plea of no contest to the single count of disturbing the peace in violation of California Penal Code section 415. Resp. Exh. 3. All other charges arising out of his April 24, 1999 arrest were dismissed.

On September 6, 2000, Giauque filed a motion in the state criminal case for the return of property seized by the Humboldt County Sheriff's Department incident to his arrest, including the marijuana. The parties stipulated that Giauque possessed a legitimate physician's recommendation card for the use of medical marijuana under California's Compassionate Use Act of 1996, Cal. Health & Safety Code § 11362.5.[1] *See* Order for Return of Property, Resp. Exh. 4 at 1 ("Order for Return of Property"). On January 18, 2001, Superior Court Judge W. Bruce Watson issued an order for return of Giauque's property including the marijuana. In so doing, Judge Watson explicitly found that under the facts before him, federal law did not "preempt the California voters from approving medical use of marijuana." *See* Order for Return of Property, at 1–2.

After Humboldt County Sheriff Dennis Lewis failed to follow the court's order and return the marijuana to Giauque, the court issued an order to show cause on March 26, 2001, followed by an order for contempt with a stay of enforcement filed on May 7, 2001.

On March 30, 2001, the County of Humboldt and the Humboldt County Sheriff's Department, by and through Sheriff Lewis, filed a Complaint for Interpleader and Declaratory relief in this court against Giauque, the United States Department of Justice, the Drug Enforcement Administration, and several unnamed "John Doe" federal defendants. The action sought a determination as to who was entitled to the subject marijuana. Petitioner responded with a motion to dismiss and discharge of stakeholder.

---

1. California Health & Safety Code section 11362.5(d) provides:

 Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician.

On May 23, 2001, the United States Drug Enforcement Agency presented an application for issuance of a seizure warrant, pursuant to 21 U.S.C. § 881, allowing seizure and forfeiture of the marijuana at issue, to United States District Judge Charles A. Legge, to whom the civil interpleader action had been assigned. Judge Legge issued the warrant, and the subject marijuana was turned over to the Department of Justice. In issuing his decision, Judge Legge stated, "[B]ecause I am, shall I say, trumping the jurisdiction of the state court, I believe that the state court's ruling [on the legality of medical marijuana under federal law] was in error." Transcript of Proceedings, May 23, 2001, Resp. Exh. 7 at 4. On June 8, 2001, Judge Legge dismissed the civil interpleader action as moot. Following Judge Legge's retirement from the bench, the matter was transferred to this court for resolution.

■ On July 25, 2001, Giauque filed a motion for return of property pursuant to Federal Rule of Criminal Procedure 41(e). After discovery on the issue of Giauque's medical need, Giauque and the United States filed cross-motions for summary judgment on August 7, 2002. This court construes Giauque's summary judgment as a renewed motion for reconsideration of issuance of the search warrant for lack of jurisdiction, or alternately as a motion for return of property pursuant to Rule 41(e).[2] The court deems Respondent's motion for summary judgment an opposition to Giauque's motions.

II. *Giauque's Conformity with California's Compassionate Use Act of 1996*

In keeping with the principle that courts should avoid unnecessary determination of

constitutional claims, this court ordered discovery as to Giauque's medical need for marijuana on January 7, 2002. In his deposition, Giauque provided testimonial and documentary evidence that he had been examined in the spring of 1998 by Dr. Tod Mikuriya, who had recommended use of marijuana to control pain from back injury, and that on March 12, 2002, Dr. Frank Lucido concurred with Dr. Mikuriya's earlier recommendation. Joint Statement of Undisputed Facts ("JSUF") ¶ 11. The United States, however, has declined to take a position on Giauque's medical need, instead maintaining that Giauque's qualification for medical use of marijuana under California law is irrelevant to the issue of Giauque's right to possess the marijuana under federal law. Joint Statement of July 19, 2002 ¶ 3.

Although he has presented no evidence to the court on the issue, Giauque maintains in his opposition that he grew the marijuana at issue himself. Pet. Opp. at 6 n. 1. The government does not dispute this fact. California's Compassionate Use Act of 1996 permits the cultivation and possession of marijuana for medical need by a patient or a patient's primary caregiver, but does not create exceptions to the state's prohibition on the sale, purchase, or distribution of marijuana. *See* Cal. Health & Safety Code § 11362.5(d).

*DISCUSSION*

Giauque offers a number of reasons why this court erred in issuing the warrant for seizure of the subject marijuana from the Humboldt County Sheriff's Department. Giauque's chief argument is that the federal statute banning possession of narcotics, pursuant to which the warrant was issued, exceeds Congress's powers under the

---

2. Although this court has already ruled on the propriety of the seizure warrant, "interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment, and may be modified to the same extent if the case is reassigned to another judge." *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir.1996) (quoting *In re United States*, 733 F.2d 10, 13 (2d Cir.1984)).

Commerce Clause as applied to his own possession of a small amount of marijuana. However, he first offers jurisdictional objections, arguing that the warrant improperly interfered with the *in rem* jurisdiction of the state court and constituted an improper review of state court action by a lower federal court. Because this court finds the jurisdictional arguments dispositive, it does not reach Giauque's constitutional challenge.

### I. *Concurrent In Rem Jurisdiction*

Giauque contends that the issuance of the seizure warrant and this court's continuing jurisdiction over the subject marijuana violate the rule against concurrent exercise of *in rem* jurisdiction. Relying on *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142 (9th Cir.1989), Giauque argues that the Humboldt Superior County Court exercised *in rem* jurisdiction over the marijuana by holding it as evidence during his criminal trial, and that the issuance of a seizure warrant by this federal court is void as the assumption of *in rem* jurisdiction over a *res* that was already under the *in rem* jurisdiction of another court. *Id.* at 1145.

■ Although actions on the same matter may proceed concurrently in state and federal court where suit is brought *in personam* for monetary damages or injunctive relief, the Supreme Court has long recognized that in suits which are *in rem* or *quasi in rem*—where control of the *res* at issue is essential to the court's jurisdiction—exclusive jurisdiction in one court is necessary in order "to avoid unseemly and disastrous conflicts in the administration of our dual judicial system . . . and to protect the judicial processes of the court first assuming jurisdiction." *Penn Gen. Casualty Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850 (1935) (citations omitted). The Court has therefore ruled that "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other."[3] *Id.*

---

**3.** Rather than addressing Giauque's jurisdictional arguments on their own terms, the government counters with the refrain that because possession of marijuana is illegal under federal law, this court cannot under any circumstances order the marijuana returned to Giauque. This argument goes to the merits of Giauque's motion, not to the antecedent question of this court's jurisdiction. If seizure of the marijuana violates the basic principles of federalism such that this court does not have subject matter jurisdiction in the matter upon which the seizure warrant was premised, the court cannot reach the legality of possession of marijuana under federal law, and the marijuana should be returned to state court for resolution of the issue there.

The United States also maintains that because possession of marijuana is prohibited under federal law, federal jurisdiction can trump state court jurisdiction. For this proposition, the government relies on *Arapahoe County Public Airport Auth. v. FAA*, 242 F.3d 1213, 1219 (10th Cir.), *cert. denied*, 534 U.S. 1064, 122 S.Ct. 664, 151 L.Ed.2d 578 (2001), in which the Tenth Circuit, in reviewing a decision of the Federal Aviation Administration ("FAA") to disallow a ban on all scheduled flights at the petitioner's airport, declined to give preclusive effect to a prior decision of the Colorado Supreme Court upholding the ban as consistent with federal law.

*Arapahoe* hardly stands for the broad assertion that any decision of state courts that interprets federal law may be revisited by federal courts. Although *Arapahoe* in a general sense involved principles of federalism, the similarity between that case and the present one ends there. In *Arapahoe*, the court addressed the very specific issue of the preclusive effect of state court decisions in subsequent adjudications by a federal administrative agency. The court ruled that in this context, the preclusive effect of state decisions was governed by common law doctrines of res judicata and collateral estoppel. The court further held that application of these common law doctrines could be limited by the Supremacy Clause "if the effect of the state court judgment or decree is to restrain the exercise of the Unites States' sovereign

A. *State Proceedings*

In *1985 Cadillac Seville*, California state police stopped a driver for erratic driving and arrested him for driving under the influence. 866 F.2d at 1144. After search of the car revealed narcotics and $434,097 in cash, police seized both the money and the vehicle. *Id.* A local district attorney's office filed a state forfeiture action against the currency, and the state court ordered that the money be held by state authorities pending resolution of the case. *Id.* No state action was filed against the vehicle. *Id.* In a transaction which remained unclear to the Circuit Court, the DEA subsequently seized both the money and the vehicle and filed federal forfeiture actions against each. *Id.* The district court granted summary judgment to the government on the issue of forfeiture. *Id.* Apparently raising the issue of jurisdiction *sua sponte*, the Court of Appeals held that under *Penn General*, the state proceedings against the currency barred the federal court from asserting *in rem* jurisdiction over the same *res*. *Id.* at 1144–45. With respect to the vehicle, however, the court noted briefly that no state forfeiture action had been filed, and that the jurisdictional problem therefore did not arise: "The 1985 Cadillac Seville automobile was the subject of neither the state forfeiture complaint nor of any state court order. The district court had proper jurisdiction over it, and we may proceed to the merits of the appeal." *Id.* at 1146.

Unlike the currency in *1985 Cadillac Seville*, no state forfeiture action was ever brought against the marijuana at issue in the present case. The marijuana was seized by the police officers who arrested Giauque and held as evidence in the state criminal case against him. The state court order regarding the marijuana seized from Giauque resulted from Giauque's motion for the return of evidence in his criminal case, not from an *in rem* forfeiture proceeding. *See* Order for Return of Property, Resp. Exh. 4; Cal.Penal Code § 1538.5(a). The court therefore considers whether the seizure itself or the state court's order to return the marijuana to Giauque constitute a level of exclusive control over the marijuana that would bar federal proceedings under *Penn General*.

Even in the absence of a state forfeiture action, courts have found that in some cases, the principles articulated in *Penn General* bar federal *in rem* proceedings against property seized by police pursuant to state court warrants. *See, e.g., United States v. $506,231*, 125 F.3d 442 (7th Cir. 1997); *Scarabin v. DEA*, 966 F.2d 989 (5th Cir.1992). Courts to apply *Penn General* in this context have done so based on state statutes governing custody of property seized by police. Where state statutes place items seized by local law enforcement under judicial control, courts have held that seizure by police itself constitutes an assertion of jurisdiction over the seized items by the state courts. *See Scarabin, supra* (finding that state law granted courts exclusive control over *res* where statute provided that seized property "shall be retained under the direction of the judge" and, when no longer needed,

---

power by imposing requirements that are contrary to important and established federal policy." *Id.* at 1219.

The government has offered no reason why the preclusion standards set forth in *Arapahoe* should displace the rule against concurrent *in rem* jurisdiction set forth in *Penn General*. The principles articulated in *Arapahoe* govern claim preclusion rather than jurisdiction, and

concern the balance between state courts and federal agencies rather than between state and federal courts. As such, *Arapahoe*'s relevance to concurrent *in rem* jurisdiction is tangential at best. Certainly, it does not require altering the analysis set forth by the Supreme Court in *Penn General*, which carefully balances federalism issues in precisely the present context.

"shall be disposed of according to law, under the direction of the judge"); *United States v. $490,920 in United States Currency,* 911 F.Supp. 720 (S.D.N.Y.1996) (finding statute provided *in rem* jurisdiction where statute and case law provided that seized items be held "in the custody of the court"); *Commonwealth v. Rufo,* 429 Mass. 380, 708 N.E.2d 947, 949 (1999) (suggesting that seizure pursuant to warrant constituted assertion of jurisdiction under statute that provided seized evidence be held "under the direct and control of the court" and "disposed of as the court or justice orders"); *Johnson v. Johnson,* 849 P.2d 1361, 1364 (Alaska 1993) (search warrant conferred jurisdiction over seized currency to the exclusion of federal jurisdiction under statute requiring peace officer to bring all seized property before judge).

In *Scarabin,* local police executed a search warrant on a marina operated by Scarabin, seizing negligible evidence of drugs and approximately twelve thousand dollars in cash. 966 F.2d at 991. Although Scarabin was arrested, all charges against him were dropped, and no state forfeiture action was filed against the seized money. Acting without authority from the state court, local law enforcement turned the seized money over to the DEA for civil forfeiture proceedings under federal law. *Id.*

The Fifth Circuit found that under Louisiana statutory law, the state court "had exclusive control over the *res* by virtue of issuing the search warrant that procured the seized funds." *Id.* at 993. The court rested its decision on the provision of Louisiana's rules of criminal procedure governing the disposition of property seized by police pursuant to a warrant. The section "clearly and unequivocally ... provides that the state court asserts control over items seized pursuant to its warrant." 966

F.2d at 993–94. The relevant rule read as follows:

When property is seized pursuant to a search warrant, it shall be retained under the direction of the judge. If seized property is not to be used a [*sic*] evidence or is no longer needed as evidence, it shall be disposed of according to law, under the direction of the judge.

*Id.* at 994 (quoting La.C.Cr.P. art. 167).

The court in *United States v. One 1979 Chevrolet C–20 Van,* 924 F.2d 120 (7th Cir.1991), similarly found that state law vested exclusive control over seized property in the state court from the moment of seizure. In this case, after arresting a motorist for driving under the influence, police conducted a warrantless search of his van and discovered over one hundred grams of marijuana. *Id.* at 121. The police seized the van at the scene, and later placed a request with the FBI that the agency initiate federal administrative forfeiture proceedings against the vehicle. *Id.* The FBI commenced proceedings four days after the seizure, and police turned the van over to federal agents the same day. *Id.*

The *1979 Chevrolet C–20 Van* court found that federal jurisdiction was barred because Illinois law did not allow state officials to transfer the van to federal authorities without a judicial order. The state statutes governing seizure and forfeiture of the instrumentalities of drug trafficking made clear that the state court alone had power to dispose of the property at issue, mandating that "[p]roperty taken or detained under this Section shall not be subject to replevin, but is deemed to be in the custody of the Director *subject only to the order and judgments of the circuit court having jurisdiction over the forfeiture proceedings.*" *Id.* at 122 (quoting Ill. Rev.Stat., ch. 56 ½ § 712(d), (f)(3)) (emphasis in *1979 Chevrolet C–20 Van* ). The

court found that by passing the van to federal officials without an order from the state court, the local police department violated state laws on the disposition of property. Finding that "possession obtained through an invalid seizure neither strips the first court of jurisdiction nor vests it in the second," *id.* at 123 (quoting *United States v. $79,123.49 in U.S. Cash and Currency*, 830 F.2d 94, 98 (7th Cir. 1987)), the court dismissed the federal action for lack of subject matter jurisdiction. The court noted that the federal authorities could have gained possession of the van legitimately by seeking a turnover order from state court. *Id.* at 123.

Courts have not universally found that seizure by state authorities alone blocked federal *in rem* jurisdiction over the seized property. A number of courts have allowed federal forfeiture actions to proceed against property seized by police officers so long as no state court forfeiture action was pending. *See, e.g., United States v. One 1986 Chevrolet Van*, 927 F.2d 39, 44–45 (1st Cir.1991); *Madewell v. Downs*, 68 F.3d 1030 (8th Cir.1995); *United States v. $639,470 U.S. Currency*, 919 F.Supp. 1405 (C.D.Cal.1996).

In *1986 Chevrolet Van*, the court summarily rejected claimant's arguments that state court control for purposes of *Penn General* begins with seizure rather than with the commencement of forfeiture proceedings. 927 F.2d at 44–45. As a number of subsequent courts have recognized, however, the decision fails to articulate any reasoning behind this conclusion. *See Scarabin*, 966 F.2d at 994; *$490,920*, 911 F.Supp. at 727.

In the decisions laying out an analysis more fully, courts generally have accepted—at least for purposes of argument—that a state statute that provides judicial control over seized evidence in principle could bar federal forfeiture proceedings under *Penn General* from the moment of seizure. These courts have concluded that a federal forfeiture action was not barred in the particular instance based on findings that the state statute at issue was not of a character that provided sufficient judicial control. In *Madewell v. Downs*, for example, the court found that "seizure of property pursuant to a state warrant does not establish exclusive state jurisdiction over the seized property preventing its voluntary transfer to federal authorities." 68 F.3d at 1042. The court reasoned that unlike the law at issue in *Scarabin* that placed all seized property within the state court's *in rem* jurisdiction, Missouri "has no such jurisdictional element to its statutory warrant and seizure scheme, but instead approves of the voluntary turnover of seized property from state or local officials to federal agencies for commencement of forfeiture proceedings."[4] *Id.* at 1042. *See also United States v. Certain Real Property*, 986 F.2d 990, 995–96 (6th Cir.1993) (finding that Michigan's forfeiture law did not confer *in rem* jurisdiction until the filing of a forfeiture complaint); *United States v. $119,000 in U.S. Currency*, 793 F.Supp. 246, 250 (D.Hawai'i 1992) (finding that Hawai'i law did not require turnover orders or confer *in rem* jurisdiction over items held as evidence in criminal actions).

---

4. The *Madewell* court found that a Missouri statute that governed the disposition of unclaimed seized property by court order did not vest jurisdiction over the property in the court. 68 F.3d at 1043. The statute provided " 'property which comes into the custody of an officer or of a court as the result of any seizure and which has not been returned to

the claimant shall be disposed of' by court order 'upon claim having been made and established, to the person who is entitled to possession' and that such claim 'shall be made by written motion filed with the court with which a motion to suppress has been, or may be, filed.' " *Id.* at 1043 (quoting Mo.Rev. Stat. § 542.301).

One federal district court has concluded that California law does not confer *in rem* jurisdiction over items seized pursuant to a warrant. In *United States v. $639,470 U.S. Currency, supra*, the court found no indication in the California Health and Safety Code—the section of the California Code in which civil forfeiture provisions are set forth—that seizure alone would create *in rem* jurisdiction over property. Citing *Scarabin*, the court acknowledged courts in other jurisdictions had found the contrary, but held that those cases turned on "idiosyncratic provisions of state law" different from the California law at issue.[5] *$639,470*, 919 F.Supp. at 1411.

■ Although discussing *Scarabin*, in which the court found that the Louisiana rules of criminal procedure conferred *in rem* jurisdiction over all items seized pursuant to a warrant, the court in *$639,470* looked for statutory provisions conferring jurisdiction over seized property only in sections of the California Health & Safety Code governing forfeiture actions. The court did not address the parts of the California Penal Code governing the control of items seized pursuant to a warrant in a criminal case. California Penal Code

section 1536, which governs the care of items seized by law enforcement officers, provides as follows:

> All property or things taken on a warrant must be retained by the officer in his custody, subject to the order of the court to which he is required to return the proceedings before him, or of any other court in which the offense in respect to which the property or things taken is triable.

Although placing seized items in the custody of the officer rather than the court, section 1536 grants the officer no discretion to dispose of the items in question. *See $490,920*, 911 F.Supp. at 725 (finding state statute conferred *in rem* jurisdiction by providing that seized property could be held in custody of warrant applicant subject to order of court). The officer "must" retain the items in his custody; the seized items may be disposed of only by court order. An officer who releases items from his custody without an appropriate order violates section 1536. This in effect makes the seizing officer an agent of the court for the purpose of taking physical possession of the seized evidence. Cases interpreting section 1536 confirm that the officer hold-

---

5. In *$639,470*, the district court also relied on *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142 (9th Cir.1989) as direct authority for its holding that under California law, police seizures alone did not implicate *Penn General*. In *1985 Cadillac Seville*, the court raised the issue of concurrent *in rem* jurisdiction *sua sponte* to bar federal jurisdiction over currency that was the subject of state forfeiture proceedings, but allowed the federal forfeiture action to proceed against a vehicle that had been seized by state police, but against which no state forfeiture action had been brought nor order. *Id.* at 1146. ("The 1985 Cadillac Seville automobile was the subject of neither the state forfeiture complaint nor of any state court order. The district court had proper jurisdiction over it, and we may proceed to the merits of the appeal.") The court in *$639,470* found the *1985 Cadillac Seville* court's decision to address the

merits of the appeal on the vehicle implied a holding that seizure under California law does not alone create *in rem* jurisdiction over seized property to the exclusion of federal jurisdiction. 919 F.Supp. at 1412. The district court determined that this authority bound it to find that no state court *in rem* jurisdiction attached to the currency by virtue of the seizure alone. *Id.* It is true that the *1985 Cadillac Seville* court would not have reached the merits of the appeal with respect to forfeiture of the vehicle had it determined seizure of the vehicle alone constituted an assertion of *in rem* jurisdiction. However, no party argued that seizure alone implicated *Penn General*, and the court's failure to note and address that issue on its own does not constitute a resolution of the problem on its merits.

ing the property acts solely on behalf of the court. *People v. Superior Court (Laff)*, 25 Cal.4th 703, 713, 107 Cal.Rptr.2d 323, 23 P.3d 563 (2001) ("Law enforcement officials who seize property pursuant to a warrant issued by the court do so on behalf of the court, which has authority pursuant to Penal Code section 1536 to control the disposition of the property.").

Section 1538.5 of the California Penal Code provides and vests in courts the explicit power to return property held in evidence. Cal.Penal Code § 1538.5. The officer holding such evidence on behalf of the court retains no power to dispose of property. Courts, unlike law enforcement, also have the power to order seized property destroyed.

Section 1536 pertains to "property or things taken on a warrant." California courts have also clearly stated that courts retain no less control over property seized by police without a warrant. *Gershenhorn v. Superior Court*, 227 Cal.App.2d 361, 366, 38 Cal.Rptr. 576 (Cal.App. 2d Dist.1964).[6] Other courts have found that warrantless seizures can confer *in rem* jurisdiction where state statutes place seized items within the exclusive control of the courts. *See $506,231, supra* (finding that under *Penn General,* warrantless seizure by state authorities precluded federal forfeiture proceeding where turnover without court order would violate state law); *1979 Chevrolet C–20 Van, supra* (same).

California courts have also interpreted section 1536 to confer jurisdiction on state courts to hear non-statutory motions for return of seized property held for use as evidence. "[E]ven in the absence of statutory authorization, the superior court possesses the inherent power to conduct proceedings and issue orders regarding property seized from a criminal suspect pursuant to a warrant issued by the court." *People v. Superior Court (Laff),* 25 Cal.4th at 713, 107 Cal.Rptr.2d 323, 23 P.3d 563; *see also Ensoniq Corp. v. Superior Court,* 65 Cal.App.4th 1537, 1547, 77 Cal.Rptr.2d 507 (Cal.App. 4th Dist.1998). As such, courts retain jurisdiction to dispose of seized items even after the criminal case has been completed, *People v. Superior Court, Orange County,* 28 Cal. App.3d 600, 607–08, 104 Cal.Rptr. 876 (Cal. App 4th Dist.1972) (court had jurisdiction to hear motion for return of property made at return of 'not guilty' verdict), and may return property in the absence of any criminal proceeding in a 'special proceeding' separate from any underlying criminal case, *Ensoniq Corp.,* 65 Cal.App.4th at 1547, 77 Cal.Rptr.2d 507. This jurisdiction over seized property exists separate and apart from the criminal matter by virtue of the judicial control over seized items conferred by statute, in much the same manner as *in rem* jurisdiction.

The extent of judicial control conferred by section 1536 well might be sufficient on

---

**6.** The *Gershenhorn* court described the relationship between custodial officer and court in detail:

> [E]ven as to property not yet offered or received in evidence we think that judicial control still exists. We are not now concerned with a private seizure, by a private individual, for some purpose of his own. We deal with property seized by a public officer, acting under the color of his status as a law enforcement officer, and seized solely on the theory that it constitutes a part of the evidence on which judicial action

against its owner or possessor will be taken. We regard property so taken and so held as being as much held on behalf of the court in which the contemplated prosecution will be instituted as is property taken and held under a warrant. The seizing officer claims no right in or to the property, or in or to its possession, save and except as the court may find use for it. He must respond, as does any custodian, to the orders of the court for which he acted.

227 Cal.App.2d at 366.

its own to find that, under *Penn General,* federal courts may not take jurisdiction over property seized by California state authorities without a state turnover order. In the present case, however, there is more—the state court actively asserted jurisdiction over the seized property by adjudicating Giauque's motion for return of property and ordering that the Sheriff return the marijuana to Giauque.

■ Section 1536 requires that the seizing law enforcement officer retain custody of seized property, subject to order of the court. Sheriff Lewis was not authorized by statute or otherwise to dispose of the property absent a court order. After the state court ordered the Sheriff to return the marijuana, he certainly had no discretion to dispose of the property in any other way. After the state court assumed jurisdiction and issued the order, the marijuana was unquestionably under the exclusive control of the state court. Other courts have strongly suggested that disposition of seized property by state courts constitutes an assertion of exclusive control sufficient to confer *in rem* jurisdiction, even where no forfeiture proceeding is pending. *See $506,231,* 125 F.3d at 448 (finding that by issuing order that property seized on warrantless search be returned, even in the absence of forfeiture, state court *"was* exercising jurisdiction—and openly exercising it to the exclusion of the federal court."); *One 1985 Cadillac Seville,* 866 F.2d at 1146 (noting that court had jurisdiction over vehicle that was "the subject of neither the state forfeiture complaint nor of any state court order."); *$490,920,* 911 F.Supp. at 724–25, 731–32 (finding that property remained in the exclusive jurisdiction of the state court until local authorities fully complied with outstanding order).

■ By seizing the marijuana from the Sheriff, federal law enforcement necessarily contravened the orders of a state court disposing of property under its control. Federal authorities may not "muscle in" on state proceedings in order to gain control over property seized by state police. *See $506,231,* 125 F.3d at 450. When federal authorities seek to gain control over a *res* already in the control of a state court, the proper procedure is to seek turnover order from that court. *Id.* Federal courts cannot bypass state laws giving seized property into the exclusive control of state courts by "trumping" the state court's jurisdiction—such is precisely the unseemly conflict between judicial systems that *Penn General* sought to avoid.

## B. *Federal Proceedings*

Having found that California statutes gave the state court exclusive control over the subject marijuana in a manner contravening *Penn General,* the question remains whether issuance of the seizure warrant constitutes such interference. The present case is in a somewhat unusual posture for application of *Penn General* in that no federal action has yet been filed, and the present matter concerns only the warrant that issued for seizure of the marijuana.

■ The court need not delve into the question of whether federal *in rem* jurisdiction attaches at the time of seizure or at the commencement of the forfeiture action. The warrant application sought seizure pursuant to the forfeiture provisions in 21 U.S.C. section 881. A forfeiture action under this section is an *in rem* proceeding, *One Cadillac Seville,* 866 F.2d at 1145, and this court would therefore be barred from asserting jurisdiction in such an action by *Penn General.* A federal court cannot issue warrants in furtherance of proceedings over which there is no federal subject matter jurisdiction. Without the power to adjudicate the underlying matter, this

court is also without the power to issue warrants.

 Even if this court had the power to issue a warrant, seizure of the subject marijuana would violate the principles of comity and federalism articulated *Penn General* no less than assertion of *in rem* jurisdiction. Seizure of the *res* at issue in a state court dispute deprives the state court of the exclusive possession and control over the property that is the *sine qua non* of *in rem* jurisdiction. *See Penn General*, 294 U.S. at 195, 55 S.Ct. 386. The *Penn General* Court sought "to avoid unseemly and disastrous conflicts in the administration of our dual judicial system, and to protect the judicial processes of the court first assuming jurisdiction." *Id.* The conflict hardly seems less disastrous or unseemly, or the state judicial process more respected, because the federal court has stripped the state court of jurisdiction in service of an *in personam* action, rather than an *in rem* one. The lesson of *Penn General* is clearly that federal courts may not interfere with state court *in rem* jurisdiction by forcibly taking possession of the *res*. Under this principle, issuance of a seizure warrant is no less forbidden than commencement of a forfeiture action.

The court finds that seizure of the marijuana interferes with state court's exclusive control under California Penal Code section 1536 and directly violates the state court's order returning the marijuana to Giauque, and that such interference with state proceedings is barred under *Penn General.*

## II. *Subject Matter Jurisdiction under the Rooker–Feldman Doctrine*

 Giauque also argues that under the *Rooker–Feldman* doctrine, the seizure of marijuana under federal law constitutes an impermissible review of the state court action by a federal court.[7] The *Rooker–Feldman* doctrine is premised on the principle that federal district courts are courts of original jurisdiction and therefore lack jurisdiction to review the decisions of a state judicial proceeding. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Doe & Associates Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir.2001). Only the Supreme Court can review state court rulings, via the procedures set forth in 28 U.S.C. § 1257. This doctrine applies to interlocutory orders of lower state courts as well to as final judgments of the highest court of the state. *Doe & Associates*, 252 F.3d at 1030.

 While general challenges related to federal issues litigated in state court proceedings are permissible, a federal district court may not hear claims which are "inextricably intertwined" with a state court ruling in a particular case. *Feldman*, 460 U.S. at 483–84 n. 16, 103 S.Ct. 1303; *Bianchi v. Rylaarsdam*, 334 F.3d 895 (9th Cir.2003). The Ninth Circuit has held that where a district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined. *Doe & Associates*, 252 F.3d at 1030.

If the test were simply that the district court must hold the state court was wrong, jurisdiction would plainly be inappropriate here. A comparison of the findings of the state court in granting Giauque's motion for return of property with the findings of this court in issuing the warrant illustrate the conflict. In its opposition to Giauque's motion for return of his marijuana in state

---

7. While Giauque raises the *Rooker–Feldman* doctrine only in his opposition papers, the doctrine goes to the subject-matter jurisdiction of this court and therefore cannot be waived. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)

court, the County of Humboldt argued that the subject property was contraband under the Controlled Substances Act. In ordering the County of Humboldt to return the marijuana to Giauque, Judge Watson found that federal law did not pre-empt the California medical use exception.[8] Judge Legge, in issuing the warrant, stated, "because I am, shall I say, trumping the jurisdiction of the state court, I believe that the state court's ruling [on the validity of California's medical marijuana under federal law] was in error." Transcript of Proceedings, May 23, 2001, Resp. Exh. 7 at 4.

The nature of the County's opposition and the findings in the Order to Return Property clearly indicate that the state court considered the possibility that federal law could prohibit the return of the marijuana to Giauque, and decided that it did not. Because state courts have an obligation to enforce federal penal laws, *Testa v. Katt,* 330 U.S. 386, 389, 67 S.Ct. 810, 91 L.Ed. 967 (1947), this decision was necessary for issuance of Judge Watson's order. "If consideration and decision have been accomplished, action in federal court is an impermissible appeal from the state court decision." *Worldwide Church of God v. McNair,* 805 F.2d 888, 892 (9th Cir.1986).

The Ninth Circuit has suggested that for federal and state actions to be "inextricably intertwined," the federal court must be asked to review not just a general legal question, but an application of law to the facts of the particular case. The *Worldwide Church* court noted a Seventh Circuit test, which looked to whether the district court "must scrutinize not only the challenged rule itself, but the [state court's] application of the rule. If, in order to resolve the claim, the district court would have to go beyond mere review of the state rule *as promulgated,* to an examination of the rule *as applied* by the state court to the particular factual circumstances of the [plaintiff's] case, then the court lacks jurisdiction." 805 F.2d at 892, *quoting Razatos v. Colorado Supreme Court,* 746 F.2d 1429, 1433 (10th Cir.1984). Under this test, the court ruled that the district court had no jurisdiction to decide whether defamatory remarks which had been the subject of state court proceedings were part of plaintiff's religious beliefs protected under the First Amendment. To do so, the court held, would impermissibly require the district court "to review the state court's decision regarding application of the plaintiffs' federal constitutional theories to the particular factual circumstances of this case." *Worldwide Church,* 805 F.2d at 893.[9]

---

**8.** Specifically, the state court granted the motion "finding that under these facts: Federal law does not preempt the California voters from approving medical use of marijuana ...." Order for Return of Property, Resp. Exh. 4 at 2. Despite its somewhat unclear wording, this court interprets this statement as a judgment on the issue argued by the County of Humboldt—whether Giauque's possession of the marijuana for medical use was legal under the federal Controlled Substances Act.

**9.** *Feldman* itself is instructive on the distinction between allowable general challenges and impermissible review of state court decisions. In *Feldman,* the respondents had

sought to take the District of Columbia bar examination, but had been prevented by a rule requiring applicants to have graduated from a law school approved by the American Bar Association. After seeking a waiver of the rule with the District of Columbia Court of Appeals, respondents brought constitutional challenges in federal district court to the rule and its application to them. The Supreme Court ruled that the federal district court had no jurisdiction to review application of the rule by the District of Columbia court, but allowed the general challenge to the rule to proceed because reviewing the rule itself did not require review of a state court's final judgment. Similarly, this court's review of the validity of the federal drug laws as

■ The Ninth Circuit has also suggested that the "impermissibly intertwined" test is identical to the test for *res judicata* as to whether there has been a full and fair opportunity to litigate. *See Worldwide Church*, 805 F.2d at 892, *quoting Robinson v. Ariyoshi*, 753 F.2d 1468, 1472 (9th Cir.1985). *Res judicata* is applicable where there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir.2001). Here, even if there is an identity of claims due to the obligation of state courts to enforce federal law, there no identity of interests between the State of California and the United States such that the issue of the preemption under the federal drug laws has been fully and fairly litigated. In its most recent opinion on *Rooker–Feldman,* however, the Ninth Circuit backed away from the analogy to the *res judicata* standard, commenting, "Stated plainly, '*Rooker–Feldman* bars any suits that seeks to disrupt or 'undo' a prior state-court judgment, regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate her claims.'" *Bianchi*, 334 F.3d at 901 (quoting *Kenmen Engineering v. City of Union*, 314 F.3d 468 (10th Cir.2002)).

■ Even under the more nuanced articulation of the "impermissibly intertwined" test, jurisdiction in the forfeiture action underlying the warrant would not be proper. Given the structure of the forfeiture provisions of the Controlled Substances Act, in order to find the marijuana forfeited, or even to find probable cause to issue a seizure warrant, this court would have to conclude that the state court erred in its application of law to the facts of Giauque's. The warrant application before this court sought seizure based on 21 U.S.C. § 881(a)(1), (f)(1), and (g). These sections provide for forfeiture of controlled substances "which have been" acquired, distributed, possessed or grown in violation of the Controlled Substances Act.[10] Because forfeiture is premised on past violations of federal law, in order to find the subject marijuana forfeited, this court would be forced to consider the identical factual issue argued by the County of Humboldt in the state return of property proceedings and ruled upon by the state court—whether Giauque's prior possession of marijuana violated the Controlled Substances Act. To address forfeiture under federal law would require this court to revisit the state court's application of federal law to Giauque's possession of the very marijuana he possessed at the time of his arrest. Although the federal government may not have been presented with a full and fair opportunity to litigate the question whether Giauque's possession of the marijuana was prohibited by federal law, the state court clearly ruled on that

---

applied to Giauque on an ongoing basis would not require reviewing his right to the return of this particular marijuana.

**10.** 21 U.S.C. § 881 provides in part:
(a) Subject property. The following shall be subject to forfeiture to the United States and no property right shall exist in them:
(1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter....
(f) Forfeiture and destruction of schedule I and II substances

(1) All controlled substances in schedule I or II that are possessed, transferred, sold, or offered for sale in violation of the provisions of this subchapter ... shall be deemed contraband and summarily forfeited to the United States....
(g) Plants.
(1) All species of plants from which controlled substances in schedules I and II may be derived which have been planted or cultivated in violation of this subchapter, ... may be seized and summarily forfeited to the United States....

question, and the government seeks to undo that ruling here. Under the *Rooker–Feldman* doctrine, this court is without subject matter jurisdiction to revisit application of the Controlled Substances Act to precisely the same factual situation addressed and adjudicated by the state court.

### CONCLUSION

Because this court finds that it would not have jurisdiction in forfeiture proceedings against the subject marijuana and that it therefore improperly issued the seizure warrant, the DEA is ORDERED to return the subject marijuana to the Humboldt County Sheriff's Department and the state court that asserted jurisdiction over it. Further proceedings as to the legality of its return to Giauque should be taken up in state court.

IT IS SO ORDERED.