Sheriff Aaron KENNARD, Salt Lake County Sheriff; Chief Sam Dawson, Sandy City Chief of Police; Chief Craig Watson, Salt Lake County District Attorney's Office; Lt. Wayne Tarwater, Weber/Morgan Narcotics Strike Force; Lt. Stephen H. Clark, Utah County Major Crimes Task Force; Sgt. Mike Ricketts, Salt Lake County Sheriff's Office; Cpl. David M. McIntyre, Iron/Garfield Counties Narcotics Task Force; Det. Tracy J. Harper, West Valley City Police Department, Plaintiffs,

v.

Honorable Governor Michael O. LEAVITT, In His Official Capacity; Honorable Attorney General Mark L. Shurtleff, In His Official Capacity; Defendants.

No. 01–CV–00171 B.

United States District Court,
D. Utah,
Central Division.

Aug. 1, 2002.

**1178**

Walter R. Miller, Sandy City Corporation, Sandy, Clark A Harms, Salt Lake County District Attorney's Office, Salt Lake City, for Aaron Kennard, Sheriff, Salt Lake County Sheriff, Sam Dawson, Chief, Sandy City Chief of Police, Craig Watson, Chief, Salt Lake County District Attorney's Office, Wayne Tarwater, Liutenant, Weber/Morgan Narcotics Strike Force, Stephen H. Clark, Liutenant, Utah County Major Crimes Task Force, Mike Ricketts, Sergeant, Salt Lake County Sheriff's Office, David M. McIntyre, Corporal, Iron/Garfield Counties Narcotics Task Force, Tracy J. Harper, Detective, West Valley City Police Department, plaintiffs.

J. Mark Ward, Mr., Utah Attorney General's Office Litigation Unit, Salt Lake City, for Michael O. Leavitt, Honorable Governor, In his official capacity, Mark J. Shurtleff, Honorable Attorney General, In his official capacity, defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT

BENSON, District Judge.

The parties stipulated to submit the above-entitled action to the Court for final disposition and ruling based on counsel's written memoranda and oral argument. On April 4, 2002 the above-entitled matter came on for argument. Deputy Salt Lake County District Attorney Clark A. Harms was present on behalf of the plaintiffs. Assistant Attorney General J. Mark Ward was present on behalf of the defendants. Janet I. Jenson and Andrew W. Stavros

were present for amicus Utahns for Property Protection. Prior to the April 4, 2002 hearing, the parties submitted written memoranda in support of their respective positions. Upon the completion of oral argument at the April 4, 2002 hearing, the matter was deemed fully submitted to the Court for disposition, entry of findings of fact and conclusions of law and final judgment.

Based on the record and submissions together with the oral arguments of counsel heard on April 4, 2002 and in prior proceedings and good cause appearing, the Court now hereby makes its FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT pursuant to Rule 52(a) Federal Rules of Civil Procedure as follows:

### FINDINGS OF FACT

1. This is an action for declaratory and injunctive relief against Utah Governor Michael O. Leavitt and Utah Attorney General Mark L. Shurtleff in their official capacities. Plaintiffs' complaint alleges five causes of action facially attacking the constitutionality of *Initiative B—The Utah Property Protection Act,* including the proposed enactment of UTAH CODE ANN. § 24–1–1 through 16, as well as proposed amendments to UTAH CODE ANN. §§ 23–20–1; 32A–13–103; 41–6–13.7; 53–10–303; 53A–16–101; 58–37–13; 58–37–20; 38–37a–6; 58–37c–15; 58–37d–7; 59–14–207; 63–30–7;76–3–501, 76–10–1107; 76–10–1108; 76–10–1603.5; and 76–10–1908, as enacted by the voters of the State of Utah in the November 7, 2000 general election. Complaint, Docket No. 1.

2. The complaint names the State of Utah as an additional defendant. However, the parties subsequently stipulated and moved the Court to dismiss the State of Utah from this action on grounds of Eleventh Amendment Immunity, and the Court so ordered. Stipulation and Order, Docket Nos. 6 and 14.

3. As to defendants Leavitt and Shurtleff, the complaint seeks a declaration that *Initiative B—The Utah Property Protection Act,* including the proposed enactment of UTAH CODE ANN. §§ 24–1–1 through 16, as well as proposed amendments to UTAH CODE ANN. §§ 23–20–1; 32A–13–103; 41–6–13.7; 53–10–303; 53A–16–101; 58–37–13; 58–37–20; 38–37a–6; 58–37c–15; 58–37d–7; 59–14–207; 63–30–7;76–3–501, 76–10–1107; 76–10–1108; 76–10–1603.5; and 76–10–1908 each and all, separately and as a statutory scheme, violate the United States Constitution and violate the Plaintiffs' rights under the United States Constitution. Plaintiffs further seek an order enjoining defendants Leavitt and Shurtleff from enforcing *Initiative B—The Utah Property Protection Act,* including the proposed enactment of UTAH CODE ANN. § 24–1–1 through 16, as well as proposed amendments to UTAH CODE ANN. §§ 23–20–1; 32A–13–103; 41–6–13.7; 53–10–303; 53A–16–101; 58–37–13; 58–37–20; 38–37a–6; 58–37c–15; 58–37d–7; 59–14–207; 63–30–7;76–3–501, 76–10–1107; 76–10–1108; 76–10–1603.5; and 76–10–1908 each and all, separately and as a statutory scheme (hereinafter "the UPPA"). Complaint, Docket No. 1.

4. The first cause of action of the complaint alleges the UPPA at § 24–1–15(2)(a)–(c) violates the Article VI Clause 2 of the United States Constitution, the Supremacy Clause. Section 24–1–15 of the UPPA states in full:

(1) For purposes of 24–1–15, property is deemed to be "seized" whenever any agency takes possession of the property or exercises any degree of control over the property.

(2)(a) **Transfer of Seized Property.** Seizing agencies or prosecuting attorneys authorized to bring civil or crimi-

nal forfeiture proceedings under this chapter shall not directly or indirectly transfer seized property to any federal agency or any governmental entity not created under and subject to state law unless the court enters an order, upon petition of the prosecuting attorney, authorizing the property to be transferred. The court may not enter an order authorizing a transfer unless:

(i) the activity giving rise to the investigation or seizure is interstate in nature and sufficiently complex to justify such transfer;

(ii) the seized property may only be forfeited under federal law; or

(iii) pursuing forfeiture under state law would unduly burden prosecuting attorneys or state law enforcement agencies.

(b) Notwithstanding Subparagraph (2)(a), the court may refuse to enter an order authorizing a transfer to the federal government if such transfer would circumvent the protections of the Utah Constitution or this chapter that would otherwise be available to the property owner.

(c) Prior to granting any order to transfer pursuant to subparagraph (2)(a), the court must give any owner the right to be heard with regard to the transfer.

(3)(a) **Sharing of Seized Property.** All property, money or other things of value received by an agency pursuant to federal law which authorizes the sharing or transfer of all or a portion of forfeited property or the proceeds of the sale of forfeited property to an agency shall be promptly transferred to the state treasurer and sold and deposited to the Uniform School Fund as provided under Section 24-1-16.

(b) Subject to subparagraph (3)(a), state agencies are encouraged to seek an equitable share of property forfeited by the federal government and to cooperate with federal law enforcement agencies in all cases in which such cooperation is in the interest of this state.

(4) Any agency that violates subparagraph (2) or (3) is civilly liable to the state for three times the amount of the forfeiture diverted and for costs of suit and reasonable attorneys' fees. Any damages awarded to the state shall be paid to the Uniform School Fund. Any agent, including state law enforcement officers who are detached to, deputized or commissioned by, or working in conjunction with a federal agency, who knowingly transfers or otherwise trades seized property in violation of subparagraph (2)(a) or who receives property, money or other things of value under subparagraph (3)(a) and knowingly fails to transfer such property to the state treasurer is guilty of a Class B misdemeanor.

Complaint, Docket No. 1.

5. The theory of the second cause of action of the complaint is identical to that of the first cause of action, only the second cause of action alleges a factual law enforcement scenario involving the Salt Lake County Sheriff's Office. Complaint, Docket No. 1.

6. The third cause of action also alleges a Supremacy Clause violation but for a different reason. Plaintiffs claim the requirement at § 24–1–15(3) to deposit all seized assets in the Uniform School Fund instead of using them for law enforcement purposes will cause State law enforcement personnel to violate so-called "Federal Equitable Sharing Agreements" which allegedly require such assets to be used for law enforcement. Complaint, Docket No. 1.

7. The fourth cause of action alleges all the theories set forth in the first through

third causes of action with the additional claim that the alleged conflict between state and federal laws violates plaintiff's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. Complaint, Docket No. 1.

8. The Fifth Cause of Action also alleges Fifth and Fourteenth Amendment due process violations, this time due to the alleged differing standards on use of seized assets to pay attorney fees and the possible exposure of state law enforcement agents to federal money laundering prosecution.

9. Plaintiffs' motion for temporary restraining order was heard by the Court on March 19, 2001. On March 20, 2001, the Court signed and entered an order (Docket No. 5), later amended March 23, 2001 to exclude the State of Utah (Docket No. 10), which enjoined defendants until March 29, 2001 at 5:00 p.m. from implementing or enforcing any and all provisions of the UPPA. The original and first amended temporary restraining orders expired of their own terms March 29, 2001 at 5:00 p.m. Docket Nos. 5 and 10.

10. The Second Amended Temporary Restraining Order herein, signed March 29, 2001 and entered March 30, 2001, temporarily restrained defendants "only in those instances in which a transfer of seized property is required to be made to federal authorities pursuant to a federal order, including federal court orders, federal warrants for arrest in rem, federal agency administrative orders and seizure orders obtained by a federal agency, from applying, enforcing or carrying out UTAH CODE ANN. Sections 24–1–15(1), (2), (3)(b) and (4) with regard to any of the plaintiffs. The Court effectively lifted the restraining order with respect to all other provisions of the UPPA. Docket No. 15."

11. On or about April 11, 2001, the Court certified the following two questions to the Utah Supreme Court:

1. Does UTAH CODE ANN. § 24–1–15(2)(a)(iii) of the Utah Property Protection Act authorize a state court judge to approve a law enforcement officer's transfer of property in obedience to a federal forfeiture order, because disobeying the federal order would place the officer in jeopardy of being found in contempt and thus "unduly burden" the officer for purposes of that provision? For purposes of this question, "federal forfeiture order" includes a federal court order, federal warrant for arrest in rem, federal agency administrative order, or seizure order obtained by a federal agency.

2. Alternatively, does UTAH CODE ANN. § 24–1–15(2)(a) even require a seizing agency or prosecuting attorney to petition a state court to authorize such a transfer when the seizing agency or prosecuting attorney is already under a federal forfeiture order? For purposes of this question, "federal forfeiture order" includes a federal court order, federal warrant for arrest in rem, federal agency administrative order, or seizure order obtained by a federal agency.

Certification Order, Docket No. 17.

12. By its own terms, the March 29, 2001 Second Amended Temporary Restraining Order was intended to remain in effect until the twentieth day after the Utah Supreme Court issued and transmitted to this Court a written opinion pursuant to Rule 41(h) Utah Rules of Appellate Procedure ("URAP") or until the twentieth day after the Utah Supreme Court entered a final order pursuant to Rule 41(e) URAP rejecting this Court's certification, whichever case applies. Docket No. 15.

13. The Utah Supreme Court on June 11, 2001 without comment declined to an-

swer the certified questions. Order of Utah Supreme Court, Docket No. 21.

14. Accordingly, the Court entered the Third Amended Temporary Restraining Order, signed July 19, 2001 and entered July 20, 2001, which again temporarily restrained defendants "only in those instances in which a transfer of seized property is required to be made to federal authorities pursuant to a federal order, including federal court orders, federal warrants for arrest in rem, federal agency administrative orders and seizure orders obtained by a federal agency, from applying, enforcing or carrying out UTAH CODE ANN. Sections 24–1–15(1), (2), (3)(b) and (4) with regard to any of the plaintiffs." Docket No. 25.

15. Because there are no genuine issues of fact requiring a trial, the parties stipulated and the Court found that the causes of action alleged in the complaint may be adjudicated by this Court's construing the meaning of the relevant UPPA provisions and deciding whether those provisions, so construed, are facially unconstitutional. Accordingly, the Third Amended Temporary Restraining Order set forth deadlines for the parties to file and serve opening, response and reply memoranda and other written materials in support of their respective positions, and to fully submit the matter to the Court for a final order and judgment. Docket No. 25.

16. On or about August 23, 2001, the Court permitted Utahns for Property Protection to file an amicus brief herein. Docket No. 33.

17. Written materials were fully submitted by November 9, 2001, Docket No. 40, and as noted above the matter came on for final hearing and oral argument on April 4, 2002.

18. With respect to the first and second causes of action which contend that the UPPA at UTAH CODE ANN. § 24–1–15(2)(a)–(c) violates the Supremacy Clause, Article VI Clause 2 of the United States Constitution, the Court finds as follows:

■ a. The Court believes UTAH CODE ANN. § 24–1–15(2)(a)(iii) does not authorize a state court judge to approve a law enforcement officer's transfer of property in obedience to a federal forfeiture order [1] because disobeying the federal order would place the officer in jeopardy of being found in contempt and thus "unduly burden" the officer for purposes of that provision.

b. However, the Court believes that UTAH CODE ANN. § 24–1–15(2)(a) does not even require a seizing agency or prosecuting attorney to petition a state court for permission to make such a transfer when the seizing agency or prosecuting attorney is already under a federal forfeiture order.[2]

c. Accordingly, because Section 24–1–15(2), as construed by the Court, does not even require a seizing agency or prosecuting attorney to petition a state court for permission to transfer property to a federal agency when the seizing agency or prosecuting attorney is already under a federal forfeiture order [3] to do so, this Court finds that UTAH CODE ANN. § 24–1–15(2)(a)–(c) on its face does not violate the Supremacy Clause, Article VI Clause 2 of the United States Constitution, the Supremacy Clause.

---

**1.** The term "federal forfeiture order" includes a federal court order, federal warrant for arrest in rem, federal agency administrative order, or seizure order obtained by a federal agency.

**2.** See footnote 1.

**3.** See footnote 1.

19. With respect to the allegation of the third cause of action, that the UPPA at § 24–1–15(3) violates the Supremacy Clause of the Constitution because the statute requires all seized assets to be deposited in the Utah State Uniform School Fund instead of using such assets for law enforcement purposes as required by federal asset sharing statutory and regulatory guidelines, the Court does not find any Supremacy Clause violation. A conflict may well exist between UPPA's mandate to use seized assets for public education only and federal statutory and regulatory mandates to use shared federally seized assets for law enforcement purposes only. The practical effect of that conflict may be that Utah no longer qualifies for such federal sharing. However, Utah's participation in the federal sharing programs at issue here is ultimately voluntary. Hence, the Court finds no preemption of federal law and no Supremacy Clause violation. Though Section 24–1–15(3) may disqualify Utah for federal sharing, that provision has not preempted the federal statutory and regulatory authority behind the federal sharing program.

20. With respect to the fourth cause of action, which alleges all the theories set forth in the first through third causes of action with the additional claim that the alleged conflict between state and federal laws violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, the Court finds no such violation.

21. With respect to the fifth cause of action, which alleges Fifth and Fourteenth Amendment due process violations due to the alleged differing standards on use of seized assets to pay attorney fees and the possible exposure of state law enforcement agents to federal money laundering prosecution, the Court finds no constitutional violation here. Even assuming a scenario wherein a U.S. attorney prosecutes local law enforcement agents for violating federal money laundering laws for being in a scheme (the UPPA) that allows illegally obtained property to be used to pay attorneys, still the Court does not find a Supremacy Clause or Due Process Clause violation.

## CONCLUSIONS OF LAW

Based on the foregoing findings of fact, the Court concludes as follows:

1. This Court has jurisdiction over this matter, and venue is proper in this Court, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

2. The Third Amended Temporary Restraining Order herein should be and the same hereby is dissolved.

3. The UPPA at Utah Code Ann. § 24–1–15(2)(a)–(c) (1953 as amended) on its face does not violate the Supremacy Clause, Article VI Clause 2 of the United States Constitution.

3. The UPPA at Utah Code Ann. § 24–1–15(3) (1953 as amended) on its face does not violate the Supremacy Clause, Article VI Clause 2 of the United States Constitution.

4. The provisions of the UPPA on their face do not violate the Due Process Clauses of the Fifth and Fourteenth Amendment to the United States Constitution, nor do they violate the Supremacy Clause, Article VI Clause 2 of the United States Constitution.

5. A judgment of no cause of action should enter in favor of defendants, with an order that the parties each bear their own respective costs and attorney's fees incurred herein.

## FINAL JUDGMENT

The Court hereby enters final judgment in the above-entitled action, NO CAUSE OF ACTION, against plaintiffs and in favor of defendants. It is further ordered that each party shall bear their own attorney's fees and costs incurred herein.