*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 44**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

KYLE SAVELY,
*Appellant,*

*v.*

UTAH HIGHWAY PATROL and UTAH DEPARTMENT OF PUBLIC SAFETY,
*Appellees.*

No. 20170266
Filed August 22, 2018

Third District, Silver Summit
The Honorable Kara Pettit
No. 170500070

Attorneys:

James C. Bradshaw, Ann M. Taliaferro, Salt Lake City, for
appellant

Sean D. Reyes, Att'y Gen., Tyler R. Green, Solic. Gen., Mark E.
Burns, Asst. Att'y Gen., Stanford E. Purser, Deputy Solic. Gen.,
Salt Lake City, for appellees

Adam R. Pomeroy, Lehi, for amicus curiae Libertas Institute

John W. Huber, Adam S. Elggren, Salt Lake City, for amicus
curiae United States of America

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PEARCE, and JUDGE DAVIS joined.

Having recused herself, JUSTICE PETERSEN does not participate
herein; DISTRICT COURT JUDGE LYNN W. DAVIS sat.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1    The Utah Highway Patrol and Utah Department of Public
Safety (collectively UHP) seized nearly $500,000 from Kyle Savely
under the Forfeiture and Disposition of Property Act (Act). Over

the next seventy-five days, the money sat in a UHP bank account and no forfeiture proceedings were filed in a Utah state district court. During this time, a federal magistrate issued a seizure warrant for the money on behalf of the Drug Enforcement Agency (DEA). UHP sent a check for the cash amount to the DEA, but it was never cashed. Mr. Savely wants his money back.

¶2   To that end, Mr. Savely filed a petition in state district court, asking the court to force UHP to return his funds because prosecuting attorneys failed to take one of the actions necessary under Utah Code section 24-4-104(1)(a) to avert a duty on the part of law enforcement to "return [the] seized property." Initially agreeing with Mr. Savely, the state district court ordered UHP to return Mr. Savely's seized funds. However, after UHP filed a motion to reconsider, the state district court reversed course, concluding that it lacked *in rem* jurisdiction of the seized funds based on principles of comity, and dismissed Mr. Savely's petition.

¶3   Mr. Savely appealed this decision. We conclude that the state district court had *in rem* jurisdiction over Mr. Savely's funds under the Act. Therefore, we reverse the state district court's dismissal of Mr. Savely's petition.

## BACKGROUND

¶4   On November 27, 2016, a UHP trooper stopped Mr. Savely while Mr. Savely was driving on Interstate 80 through Summit County, Utah. In response to his K-9's alert, the trooper detained the vehicle's occupants and searched the vehicle. The trooper uncovered no drugs or other contraband but found a case containing 52 bundles of cash.

¶5   The trooper seized the cash and provided Mr. Savely with an asset seizure notification form, providing him notice, pursuant to section 24-4-103(1) of the Act, that the cash had been seized for purposes of forfeiture. The cash was deposited into a UHP bank account for seized currency.

¶6   No further action was taken in regard to the seized cash until January 13, 2017, when a federal magistrate issued a seizure warrant for the cash. UHP sent a check in the amount of the seized cash to the DEA on January 24, 2017, but the check was never cashed or deposited.

¶7 On February 10, 2017, seventy-five days after UHP's seizure, Mr. Savely filed a petition in state district court seeking the release of his property. In a hearing on February 21, 2017, the state district court ruled in favor of Mr. Savely, concluding that UHP was required by the Act to procure an order from a state district court that authorized UHP to release the seized cash to the DEA and, thus, that UHP had unlawfully transferred the funds. Additionally, the state district court concluded that UHP had failed to take one of the actions required by Utah Code section 24-4-104(1)(a) and therefore ordered UHP to return the funds to Mr. Savely.

¶8 UHP immediately stopped payment on the January 24, 2017 check sent to the DEA. In response, the DEA served UHP with a second federal seizure warrant on February 23, 2017, after which UHP requested that the state district court reconsider its initial ruling.

¶9 The state district court heard additional arguments in response to UHP's motion to reconsider and set aside the original judgment. This time, the state district court concluded the federal court had begun exercising *in rem* jurisdiction by issuing the January 13, 2017 seizure warrant, prohibiting the state district court's exercise of *in rem* jurisdiction when Mr. Savely filed his petition. As a result, the state district court granted the motions, dismissing Mr. Savely's petition for lack of jurisdiction.

¶10 Mr. Savely appeals that decision. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

**STANDARD OF REVIEW**

¶11 We review questions of jurisdiction for correctness. *State v. Finlayson*, 2004 UT 10, ¶ 5, 84 P.3d 1193. Questions of statutory interpretation are also reviewed for correctness without deference to the lower court's opinion. *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 7, 391 P.3d 196.

**ANALYSIS**

¶12 After concluding that the federal court had exercised *in rem* jurisdiction over the seized property before any filing in a state court, the state district court dismissed Mr. Savely's petition for lack of jurisdiction. The state district court determined that this result was compelled by *Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189 (1935). When two suits are proceeding *in rem* or *quasi*

*in rem* over the same *res*, "the jurisdiction of one court must of necessity yield to that of the other." *Penn Gen.*, 294 U.S. at 195. In order "[t]o avoid unseemly and disastrous conflicts in the administration of our dual judicial system, and to protect the judicial processes of the court first assuming jurisdiction, . . . the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." *Id.* (citations omitted).

¶13  The parties disagree about whether the state district court or the federal court first exercised *in rem* jurisdiction over Mr. Savely's money. Mr. Savely contends that the state district court first acquired *in rem* jurisdiction when UHP provided him with a notice of intent to seek forfeiture.[1] Conversely, UHP and its amicus, the United States, argue that a state court does not exercise *in rem* jurisdiction under the Act until there has been a filing in the court.[2] As a result, the United States contends that the federal court was the first to exercise *in rem* jurisdiction through its issuance of the first seizure warrant.

¶14  Therefore, this case presents two interrelated questions: (1) When does a Utah state district court begin exercising *in rem* jurisdiction over property seized under the Act? and (2) Did the

---

[1] The amicus supporting Mr. Savely's position, The Libertas Institute, argues that Utah Code section 24-4-114 "strongly implies" that state district courts are imbued with *in rem* jurisdiction from the moment of seizure. Because the seizure of Mr. Savely's property and the provision of the notice of intent to seek forfeiture occurred concurrently in this case, we do not consider whether seizure itself is enough to invoke a state court's *in rem* jurisdiction.

[2] The United States attempts to take an even narrower position in its brief. Instead of arguing that *any* filing is sufficient to invoke *in rem* jurisdiction, it argues that a state district court's *in rem* jurisdiction can only be invoked by any one of the four filings required to be completed within seventy-five days of seizure to be able to proceed with forfeiture proceedings. *See* UTAH CODE § 24-4-104(1)(a). Because we determine that no filing is necessary for a state district court to be imbued with *in rem* jurisdiction, *see infra* ¶ 36, we do not consider this argument.

federal court's first seizure warrant constitute a valid exercise of *in rem* jurisdiction prior to the state district court's exercise of *in rem* jurisdiction? We address each of these questions in turn.

## I. EXERCISING *IN REM* JURISDICTION UNDER THE ACT

¶15 The first dispute we must resolve is when a Utah state district court begins exercising *in rem* jurisdiction over property seized under the Act.

¶16 Mr. Savely argues that a state district court has *in rem* jurisdiction over seized property as soon as a seizing agency serves a notice of intent to seek forfeiture, even if no "filing" has occurred in the court. He points to several provisions in the Act, including Utah Code sections 24-4-108(1), (4) and 24-4-114, to support this contention.

¶17 Conversely, UHP and the United States contend that *in rem* jurisdiction can never be vested until there has been a filing in the state district court. Moreover, relying on Utah Code section 24-1-103(1), they contend that the Act only recognizes *in rem* jurisdiction when an action has been filed.

¶18 Consequently, we must first decide if it is possible for a court to exercise *in rem* jurisdiction over property without any filing in the court. If it is possible, we must determine if the Act provides for *in rem* jurisdiction without a filing, and, if so, at what time. Finally, we must decide whether the state district court exercised *in rem* jurisdiction over Mr. Savely's property.

### A. Exercising In Rem *Jurisdiction Without a Filing*

¶19 "The basic requirement of jurisdiction *in rem* . . . is that a court must have exclusive possession or control over the property in order to consider the suit and grant or deny the relief sought." *Scarabin v. DEA*, 966 F.2d 989, 994 (5th Cir. 1992) (citation omitted). When considering whether a state court has exercised *in rem* jurisdiction over seized property, other courts have focused on the state's statutory scheme. Where "state law expressly provides jurisdiction as an integral element of its statutory warrant and seizure scheme," the state district court is imbued with *in rem* jurisdiction at the time provided by statute. *Id.* at 993–94. Courts have recognized two different types of statutory provisions that provide jurisdiction as an integral element of the statutory scheme: (1) provisions that place custody and control of seized property in the district court and (2) provisions that restrict

or prohibit the transfer or turnover of seized property without the district court's permission.

¶20 The first type of relevant statutory provision is one that places custody and control in the district court or otherwise restricts disposition of the property to court order. When a state's statutory scheme does not provide for judicial control over seized property, courts have determined that *in rem* jurisdiction is not conferred by the seizure. *See, e.g.*, *United States v. Certain Real Prop. 566 Hendrickson Boulevard, Clawson, Oakland Cty., Mich.*, 986 F.2d 990, 993–94 (6th Cir. 1993) (concluding that "it is the filing of the forfeiture complaint in the state court which brings the *res* within the jurisdiction of the state courts" based on the language in that state's statute); *Commonwealth v. Rufo*, 708 N.E.2d 947, 949 (Mass. 1999) ("[I]n the absence of a State statute providing for judicial control over seized property, courts have held that the seizure of property by State authorities does not alone confer in rem jurisdiction on a State court." (citations omitted)).

¶21 Conversely, *in rem* jurisdiction is exercised at the time of seizure when a state statute places control over seized property with the state court. *See, e.g.*, *United States v. One 1987 Mercedes Benz Roadster 560 SEC, VIN WDBBA48D3HA064462*, 2 F.3d 241, 244 (7th Cir. 1993) (recognizing that a state court can have "jurisdiction over a *res* as a result of continuing state forfeiture proceedings, or when a state statutory scheme vests lawful authority over a *res* in state court" (citations omitted)); *Scarabin*, 966 F.2d at 993–94 (recognizing that when "state law expressly provides jurisdiction as an integral element of its statutory warrant and seizure scheme," "the state district court had exclusive control over the *res* by virtue of issuing the search warrant that procured the seized [property]" beginning the moment of seizure); *In re Seizure of Approximately 28 Grams of Marijuana*, 278 F. Supp. 2d 1097, 1102 (N.D. Cal. 2003) ("Where state statutes place items seized by local law enforcement under judicial control, courts have held that seizure by police itself constitutes an assertion of jurisdiction over the seized items by the state courts." (citations omitted)); *United States v. One Black 1999 Ford Crown Victoria LX*, 118 F. Supp. 2d 115, 118 (D. Mass. 2000) (recognizing a state district court's exercise of *in rem* jurisdiction where the property was seized pursuant to a state court warrant and the state statute provided that "property seized in execution of a search warrant shall be disposed of as the court or justice

orders" (citation omitted)); *United States v. $490,920 in U.S. Currency*, 911 F. Supp. 720, 725 (S.D.N.Y. 1996) ("New York's statutory scheme . . . provides that the disposition of the res is subject only to orders of the state court. This degree of control suggests that New York's warrant and seizure scheme is jurisdictional." (citation omitted)); *Rufo*, 708 N.E.2d at 949 (recognizing that a statute which provides that "[p]roperty seized pursuant to a search warrant . . . is held 'under the direction of the court'" is of the character that "provides a proper basis for jurisdiction over property" based solely on the seizure).

¶22 The second type of relevant statutory provision is one that restricts or prohibits the transfer or turnover of seized property without the district court's permission. "[T]urnover order requirements are indicative of the jurisdictional nature of a state's warrant and seizure scheme." *$490,920 in U.S. Currency*, 911 F. Supp. at 725; *see also 1987 Mercedes Benz Roadster*, 2 F.3d at 243 (recognizing that federal jurisdiction is inappropriate where "there is no authority for the type of transfer between executives of agencies that took place" even where there is no "competing state forfeiture proceeding" because a turnover order is necessary to properly bring jurisdiction before the federal district court (citation omitted)); *Scarabin*, 966 F.2d at 994 ("Nothing in Louisiana's comprehensive forfeiture law indicates . . . that unsanctioned transfers by local police operate to defeat the state court's control over seized property." (citation omitted)); *United States v. One 1979 Chevrolet C-20 Van*, 924 F.2d 120, 122 (7th Cir. 1991) ("This case does not turn upon who won the forfeiture 'foot race' in the courts, but rather upon the fact that there is no authority for the type of transfer between executives of agencies that took place here. To the contrary, such a transfer circumvents disposition of the *res* by the circuit court, as required by both Illinois statutes that authorize actions for forfeiture."), *superseded by statute*, 720 ILL. COMP. STAT. 570/505(d) (West 1991), *as recognized in United States v. Sixty-Two Thousand Six Hundred Dollars ($62,600.00)*, 899 F. Supp. 378 (N.D. Ill. 1995)[3]; *United States*

---

[3] We note that Westlaw also currently recognizes this case as "superseded by statute," referring to *United States v. $84,940 U.S. Currency*, 86 F. App'x 978 (7th Cir. 2004), for support. We disagree. The court in *$84,940 U.S. Currency* acknowledges that the

*v. $79,123.49 in U.S. Cash & Currency*, 830 F.2d 94, 98 (7th Cir. 1987) (concluding that the seizure by federal authorities was invalid because they failed to obtain a turnover order from the state district court), *superseded by statute*, Wis. Stat. § 961.555(1) (1993); *In re 28 Grams of Marijuana*, 278 F. Supp. 2d at 1107 ("When federal authorities seek to gain control over a *res* already in the control of a state court, the proper procedure is to seek [a] turnover order from that court." (citation omitted)). If it violates the requirements in a state's statutory scheme, a federal agency's failure to get a proper turnover order violates the state court's *in rem* jurisdiction even where the property was not seized pursuant to a state warrant and the transfer occurs before any filing occurs in the state court. *See 1979 Chevrolet C-20 Van*, 924 F.2d at 121–22.

¶23 Courts have reached the conclusion that *in rem* jurisdiction has been exercised even where the state statutory scheme vests control in the district court without requiring the district court to issue a seizure warrant or have any filing submitted to the court. *See id.* at 122–23 (discussing the prohibition on transfer without a turnover order where the statutory scheme allowed seizure of property "upon process issued by any court having jurisdiction over the property, or without process if the seizure is in accordance with the Illinois Code of Criminal Procedure" (citation omitted) (internal quotation marks omitted)). This conclusion is not unique to forfeiture schemes—admiralty law, for example, also recognizes the exercise of *in rem* jurisdiction without any filing in or action by the court. "A court obtains in rem jurisdiction over a vessel when a maritime lien attaches to the vessel." *Industria Nacional Del Papel, CA. v. M/V Albert F*, 730 F.2d 622, 625 (11th Cir. 1984) (citation omitted). A maritime lien attaches when a "vessel is loaded[] or . . . when it is ready to be loaded." *Id.* (citation omitted). The court does not have to take any action, and nothing has to be filed with the court, for the court to obtain *in rem* jurisdiction over a vessel. *See id.*

---

Wisconsin statute was amended "in direct response to the . . . decision in . . . *1979 Chevrolet C-20 Van*." 86 F. App'x at 982. However, the statute at issue in *1979 Chevrolet C-20 Van* was from Illinois, not Wisconsin. 924 F.2d at 122. Therefore, we do not believe that *$84,940 U.S. Currency* actually recognized *1979 Chevrolet C-20 Van* as superseded by statute.

¶24 Accordingly, we conclude that it is possible for a state district court to begin exercising *in rem* jurisdiction over the *res* without issuing a warrant and before any filing has been made in the court. *In rem* jurisdiction is exercised from the moment the statutory scheme places custody and control over the *res* in the state court or otherwise restricts transfer without a turnover order. We must therefore determine when *in rem* jurisdiction is exercised under the Act—whether it be at the time of seizure, at the time of notice of intent to seek forfeiture, or at the time of a filing in the court.

*B. Exercising* In Rem *Jurisdiction Under the Act*

¶25 When interpreting a statute, "our primary objective is to ascertain the intent of the legislature." *Scott v. Scott*, 2017 UT 66, ¶ 22, ---P.3d--- (citation omitted). "Because [t]he best evidence of the legislature's intent is the plain language of the statute itself, we look first to the plain language of the statute." *Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 15, 301 P.3d 984 (alteration in original) (citation omitted) (internal quotation marks omitted). "Where statutory language is plain and unambiguous, this Court will not look beyond the same to divine legislative intent." *Garrard v. Gateway Fin. Servs., Inc.*, 2009 UT 22, ¶ 11, 207 P.3d 1227 (citation omitted). However, "if doubt or uncertainty exists as to the meaning or application of an act's provisions, [we] . . . analyze the act in its entirety and harmonize its provisions in accordance with the legislative intent and purpose." *Mariemont Corp. v. White City Water Improvement Dist.*, 958 P.2d 222, 225 (Utah 1998) (citation omitted) (internal quotation marks omitted). Additionally, each section "must be read in the context of the entire Act." *Business Aviation of S.D., Inc. v. Medivest, Inc.*, 882 P.2d 662, 665 (Utah 1994) (citation omitted).

¶26 The parties disagree about whether the Act itself provides for the exercise of *in rem* jurisdiction without a filing and when *in rem* jurisdiction occurs under the Act. The Act itself is not a model of clarity when it comes to the jurisdiction of state district courts. Seized property is considered to be "in the agency's custody," UTAH CODE § 24-2-103(3), while property held for forfeiture "is considered to be in the custody of the district court," *id.* § 24-4-108(4). The Act never explicitly states when seized property

becomes property held for forfeiture. And it appears that these terms may be used inconsistently throughout the Act.[4] To make matters more complicated, the Act also has a stand-alone jurisdictional section that notes that "[a] state district court has jurisdiction over any action filed in accordance with this title regarding" certain interests. *Id.* § 24-1-103(1).

¶27 We do not note this as a criticism of the legislature. As we have previously recognized, "[l]awmaking is complex and cumbersome." *Orlando Millenia, LC v. United Title Servs. of Utah, Inc.*, 2015 UT 55, ¶ 56, 355 P.3d 965. We merely recognize that the Act contains provisions that each of the parties validly seizes upon to support their competing interpretations.

¶28 While the lack of clarity regarding jurisdiction in the Act increases "the difficulty of the interpretive task," this "is no justification for standing down." *Id.* ¶ 57. We do not "get to declare ties." *Id.* Instead, it is incumbent upon us to "resolve questions of statutory interpretation—even hard ones—that come before us." *Id.* We therefore "proceed to do our best to resolve the interpretive questions raised by the parties—while acknowledging, of course, the prerogative of the legislature to step back into this dialogue (by amending the [Act]) if it deems it appropriate to do so." *Id.*

¶29 We acknowledge that when a state district court begins exercising *in rem* jurisdiction under the Act is ambiguous. UHP and the United States argue, not unreasonably, that the general jurisdiction provision of the Act shows that even if the legislature could choose to imbue the state district court with *in rem* jurisdiction before a filing in the court, it did not choose to do so. The general jurisdiction provision provides that

> [a] state district court has jurisdiction over any
> action filed in accordance with this title regarding:

---

[4] At one point, the Act notes that "property subject to forfeiture" is in the custody of an agency. UTAH CODE § 24-4-104(3)(c). It appears that "property subject to forfeiture" might be an intermediary category between "seized property" and "property held for forfeiture."

(a) all interests in property if the property is within this state at the time the action is filed; and

(b) a claimant's interests in the property, if the claimant is subject to the personal jurisdiction of the district court.

UTAH CODE § 24-1-103(1). Focusing in on the "any action filed" language, UHP and the United States argue that this provision recognizes that there must be an action filed with the state district court before the court exercises *in rem* jurisdiction.

¶30 While we recognize that this section supports an interpretation that requires filing an action before *in rem* jurisdiction is exercised, other sections of the Act support the conclusion that the state district courts begin exercising *in rem* jurisdiction, at the very latest, when property is held for forfeiture. We conclude that the strength of these other sections, and the Act as a whole, requires us to resolve the ambiguity in favor of a state district court exercising *in rem* jurisdiction over property held for forfeiture.

¶31 The Act contains both types of provisions that make jurisdiction an integral part of the seizure and forfeiture scheme: provisions that place the custody and control over property held for forfeiture in the district court and provisions that restrict the transfer of the property without a turnover order by that court. *See, e.g.*, UTAH CODE § 24-4-108(1) ("After the seizing agency gives notice that the property is to be held for forfeiture, a person or entity may not alienate, convey, sequester, or attach that property until the *court issues a final order* of dismissal or an order of forfeiture regarding the property." (emphasis added)); *id.* § 24-4-108(4) ("Property held for forfeiture is considered to be in the *custody of the district court* and subject only to: (a) the orders and decrees of the court having jurisdiction over the property or the forfeiture proceedings; and (b) the acts of the agency that possesses the property or the prosecuting attorney pursuant to this chapter." (emphasis added))[5]; *id.* § 24-4-114(1) (prohibiting

---

[5] UHP and the United States argue that provisions in the Act that allow a seizing agency or prosecuting attorney to take actions with the property without a court order defeat finding that Utah Code section 24-4-108(4) recognizes *in rem* jurisdiction. *See, e.g.*,

the direct or indirect transfer of property held for forfeiture "to any federal agency or any governmental entity not created under and subject to state law" without a court order authorizing the transfer and limiting when a court may enter such an order). Importantly, these provisions can come into effect without first requiring any filing in the court. *See id.* § 24-4-108(1) ("[A] person or entity may not alienate, convey, sequester, or attach" property between when a "seizing agency gives notice that the property is to be held for forfeiture" and when "the court issues a final order . . . regarding the property."); *id.* § 24-4-103 (requiring a seizing agency to serve a notice of intent to seek forfeiture within thirty days of seizing the property while not allowing the agency to "present a written request for forfeiture to the prosecuting attorney" until after that notice has been served).

¶32 Moreover, there are provisions of the Act that implicitly acknowledge a state court's jurisdiction over property held for forfeiture even where no action has been filed. *See id.* § 24-4-108(4) (recognizing that a court could have "jurisdiction over the property *or* the forfeiture proceedings" (emphasis added)); *id.* § 24-4-108(7) (allowing a claimant to file a hardship petition "in the court in which forfeiture proceedings have commenced; *or* . . . in any district court having *jurisdiction over the property*, if forfeiture proceedings have not yet commenced" (emphases added)); *id.* § 24-4-114 (requiring a court order to transfer property held for forfeiture even when no filing has been made with the court and recognizing a court-ordered transfer of property would be "*relinquishing jurisdiction*" (emphasis added)).

¶33 Additionally, this case presents one of the rare circumstances in which we find it appropriate to turn to

---

UTAH CODE § 24-4-104(1) (requiring the return of seized property if none of the required actions were taken within seventy-five days); *id.* § 24-4-107(8) (providing for return of seized property to innocent owners); *id.* § 24-4-108(2) (permitting the release of property held for forfeiture "if retention of actual custody is unnecessary"). We disagree. Section 24-4-108(4)(b) recognizes that these actions are permissible because the agency or prosecuting attorney is acting in accordance with the Act, and this is not incompatible with the district court's exercise of *in rem* jurisdiction.

legislative history to help resolve an ambiguity. *Cf. Gutierrez v. Medley*, 972 P.2d 913, 915 (Utah 1998) ("If there is ambiguity in the act's plain language, we then seek guidance from the legislative history and relevant policy considerations." (citation omitted) (internal quotation marks omitted)). And the legislative history here overwhelmingly shows that one of the main goals of the Act is to provide additional protections to property owners when the state holds their property for forfeiture.

¶34 The Act originated in 2000 as Initiative B, a citizen's initiative that intended to protect property owners from forfeiture abuse and "make[] the government accountable and create[] uniform procedures to treat people fairly and equally." Utah Voter Information Pamphlet, General Election November 7, 2000 [hereinafter Utah Voter Guide] at 49, "Arguments For." Among the questions asked on the ballot was whether the forfeiture law be amended to "create uniform procedures to protect property owners where forfeiture is sought by the government." Utah Voter Guide at 47. In 2007, the legislature amended the Act, adding a subsection to the transfer provisions stating that "[w]hen property is seized pursuant to the order of a state district court or state statute, the state has priority jurisdiction." 2007 Utah Laws 762–63. Substantive changes were made in 2013 that loosened the restrictions on transfers. *See* 2013 Utah Laws 1986–87. Amendments in 2014 quickly reversed those changes to ensure that transfer orders remain mandatory when state courts assume priority jurisdiction over property seized for forfeiture, maintaining the intention of the original initiative to protect property owners from forfeiture abuse. *See Hearing on S.B. 256 Before the S. Judiciary Comm.*, 60th Leg., Gen. Sess. (Mar. 3, 2014); 2014 Utah Laws 487–88.

¶35 Importantly, the transfer provision expressly prohibits a district court from "authoriz[ing] the transfer of property to the federal government if the transfer would circumvent the protections of the Utah Constitution or of this chapter that would otherwise be available to the property owner." UTAH CODE § 24-4-114(1)(d). This provision, along with the grant of *in rem* jurisdiction to the state district court over property held for forfeiture, ensures that the authority to seize and hold property for forfeiture under the Act is limited by the protections provided in the Act. This comports with the legislative intent and purpose of the Act.

¶36 Therefore, we resolve the ambiguity in the Act by determining that it imbues *in rem* jurisdiction over property held for forfeiture in the district court, even when forfeiture proceedings have not been filed in the court.

*C.* In Rem *Jurisdiction Over Mr. Savely's Property*

¶37 Because we conclude that a district court begins exercising *in rem* jurisdiction under the Act, at the very latest, when property is held for forfeiture, we must next determine if Mr. Savely's property was property held for forfeiture.

¶38 The Act does not expressly state when property becomes held for forfeiture, and therefore presents another question we must answer. However, based on the operation of several provisions in the Act, we conclude that one way for property to become property held for forfeiture is for a seizing agency to serve a claimant with a notice of intent to seek forfeiture.

¶39 An agency that wishes to seek forfeiture of seized property must "serve a notice of intent to seek forfeiture upon any claimants known to the agency" within thirty days of the seizure. *Id.* § 24-4-103(1)(a). This notice of intent to seek forfeiture must provide the claimant with specific information about the seizure and his or her rights under the Act. *Id.* § 24-4-103(1)(b).

¶40 The notice of intent to seek forfeiture triggers several rights and obligations under the Act. After the notice of intent to seek forfeiture has been served, but no later than sixty days after the seizure, the seizing agency must "present a written request for forfeiture to the prosecuting attorney." *Id.* § 24-4-103(2)(a). Additionally, the notice of intent to seek forfeiture initiates restrictions on the property, subject to a court order: "a person or entity may not alienate, convey, sequester, or attach that property until the court issues a final order of dismissal or an order of forfeiture regarding the property." *Id.* § 24-4-108(1).

¶41 Claimants to the property also have the ability to file a motion for hardship release "[a]fter the seizing agency gives notice that the property is to be held for forfeiture." *Id.* § 24-4-108(7). This hardship release entitles a claimant "to the immediate release of *property held for forfeiture.*" *Id.* § 24-4-108(6) (emphasis added).

¶42 Based on these provisions of the Act, we conclude that a notice of intent to seek forfeiture indicates that the property

constitutes property held for forfeiture. In this case, Mr. Savely was provided a notice of intent to seek forfeiture at the time his property was seized. Therefore, the state district court was vested with *in rem* jurisdiction over Mr. Savely's property beginning on November 27, 2016.

## II. FEDERAL SEIZURE WARRANT DID NOT DIVEST THE STATE DISTRICT COURT OF *IN REM* JURISDICTION

¶43 The parties also disagree about what effect, if any, the federal seizure warrants had on both the state district court's and federal court's *in rem* jurisdiction. This disagreement exists on several different levels. First, the parties disagree about whether UHP transferring a check for the amount of the seized funds could constitute a transfer of the *res* for the purposes of *in rem* jurisdiction. Second, even if a check can imbue a federal court with *in rem* jurisdiction over underlying cash, the parties further disagree on whether an *uncashed* check actually places the seized funds within the federal court's control, and thus its *in rem* jurisdiction.[6]

¶44 Circuit courts appear to be split on the first issue. *Compare Scarabin v. DEA*, 966 F.2d 989, 992–93 (5th Cir. 1992) (concluding that the DEA "never possessed or controlled" seized cash when the state law enforcement agency used the cash to purchase a cashier's check and turned the check over to the DEA), *and United States v. Thomas*, 319 F.3d 640, 644–45 (holding "that the DEA did not abandon the res when it converted the currency to a cashier's check"), *with United States v. $46,588.00 in U.S. Currency & $20.00 in Canadian Currency*, 103 F.3d 902, 905 (9th Cir. 1996) (determining that "the cashier's check was an appropriate, fungible surrogate for the seized currency" so "[t]he *res* remained identifiable and within the court's jurisdiction"). And we have been unable to locate a case where the Tenth Circuit has weighed in. However, we find it unnecessary to reach either of the parties'

---

[6] In its briefing, the United States recognizes that "[f]ederal authorities did not ultimately retain custody of the seized funds under either the first or the second seizure warrant." But it still contends that the fact that "federal authorities have refrained from taking custody of the seized funds does not discount the federal court's earlier exercise of in rem jurisdiction."

disputes on this issue. Instead, we conclude that even if an uncashed check could vest a federal court with *in rem* jurisdiction, the check issued in response to the federal seizure warrant in this case did not have such effect.

¶45 As we concluded above, the state district court began exercising its *in rem* jurisdiction over Mr. Savely's property on November 27, 2016. *See supra* ¶ 42. The first federal seizure warrant was not issued until January 13, 2017, and the corresponding check (which was never cashed) was not transferred to the DEA until January 24, 2017. On February 23, 2017, right after UHP issued a stop payment on the check, the federal court issued a second seizure warrant, but UHP never issued a second check in response.

¶46 The state district court did not take an action attempting to recognize its lack of *in rem* jurisdiction until March 31, 2017, when it concluded that it must dismiss the case for lack of jurisdiction. However, as noted above, this conclusion was incorrect. Additionally, the actions taken by the federal court and the United States are insufficient to divest the state district court's *in rem* jurisdiction or to vest such jurisdiction in the federal court.

¶47 Even if the uncashed January 13, 2017 check would generally be sufficient to confer *in rem* jurisdiction on the federal court, such was not the case here. A federal seizure, even under a seizure warrant, is invalid when it is issued after a state court is already exercising *in rem* jurisdiction over the property. *United States v. $79,123.49 in U.S. Cash & Currency*, 830 F.2d 94, 98 (7th Cir. 1987). "Possession obtained through an invalid seizure neither strips the first court of jurisdiction nor vests it in the second. To hold otherwise would substitute a rule of force for the principle of mutual respect embodied in the prior exclusive jurisdiction doctrine." *Id.* (citation omitted); *see also United States v. One 1979 Chevrolet C-20 Van*, 924 F.2d 120, 123 (7th Cir. 1991) ("The fact that the federal authorities muscled in on the van and began an administrative forfeiture proceeding before the state court action was filed did not confer jurisdiction on the federal court."); *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142, 1146 (9th Cir. 1989) ("Although we are familiar with the maxim, 'possession is nine-tenths of the law,' we prefer to apply the remaining one-tenth and decline to 'substitute a rule of force for the principle of mutual respect embodied in the prior exclusive jurisdiction doctrine.'" (citation omitted)); *In re Seizure of*

*Approximately 28 Grams of Marijuana*, 278 F. Supp. 2d 1097, 1107 (N.D. Cal. 2003) ("Federal courts cannot bypass state laws giving seized property into the exclusive control of state courts by 'trumping' the state court's jurisdiction—such is precisely the unseemly conflict between judicial systems that *Penn General* sought to avoid.").

¶48 If federal authorities wish "to gain control over a *res* already in the control of a state court, the proper procedure is to seek [a] turnover order from that court." *In re 28 Grams of Marijuana*, 278 F. Supp. 2d at 1107 (citation omitted); *see also $79,123.49*, 830 F.2d at 98 (The United States' potential inability to receive a final judgment of forfeiture in state court "would not preclude federal authorities from applying to [the state court] for an orderly turnover that would permit them to protect the federal government's interests. Surely, it did not justify them in seizing the money without so much as informing the state court of the federal claim.").[7]

---

[7] UHP and the United States cite to *Kennard v. Leavitt*, 246 F. Supp. 2d 1177 (D. Utah 2002), to argue that the transfer provision in the Act does not apply to transfers made in response to a federal seizure warrant. Further, UHP argues that the legislature adopted the *Kennard* interpretation of the transfer provision when it amended the transfer provision two years later and only made minor word changes. We disagree with both of these contentions. First, the prior construction canon, which presumes that the legislature has adopted a judicial construction of the statute when it "amends a portion of a statute but leaves other portions unamended, or re-enacts them without change," *Christensen v. Indus. Comm'n of Utah*, 642 P.2d 755, 756 (Utah 1982), only applies to statutes that "have already received authoritative construction by the jurisdiction's court of last resort, or even uniform construction by inferior courts or a responsible administrative agency." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 322 (2012). UHP provides no argument or authority that supports presuming that the legislature has adopted a single construction by a federal district court (which would be, at most, a persuasive authority in any Utah court). Second, Utah Code section 24-4-114(1) recognizes

¶49 The United States argues that the state district court would have lost *in rem* jurisdiction after none of the required filings were made within seventy-five days, making the second federal seizure warrant valid. This is not the case. "[A] failure on the part of the state court to protest the federal proceeding, or by the state to prosecute, [does not] allow[] the [federal] court to assume jurisdiction." *1985 Cadillac Seville*, 866 F.2d at 1145; *see also 1979 Chevrolet C-20 Van*, 924 F.2d at 123 ("The fact that the state court voluntarily had dismissed the state forfeiture action . . . does not mean that the state did lose jurisdiction."). Instead, "some affirmative act of abandonment is required." *1985 Cadillac Seville*, 866 F.2d at 1145. The state district court did not lose its *in rem* jurisdiction simply because UHP is not allowed to take further action to effectuate the forfeiture of the property. Indeed, the state district court retains *in rem* jurisdiction to force UHP to return the property to Mr. Savely.

¶50 Therefore, we conclude that the federal seizure warrants had no effect on the state district court's *in rem* jurisdiction.

## CONCLUSION

¶51 A state district court has *in rem* jurisdiction over any property held for forfeiture under the Act. And property becomes property held for forfeiture, at the very least, when a seizing agency serves a notice of intent to seek forfeiture under the Act. Because Mr. Savely was provided with a notice of intent to seek forfeiture long before any federal seizure warrant was issued, we conclude that the state district court was the first to properly exercise *in rem* jurisdiction to the exclusion of any other court. Therefore, we reverse the state district court's conclusion that it lacked *in rem* jurisdiction and remand for further proceedings consistent with this opinion.

---

that a transfer pursuant to a state court order would be "*relinquishing jurisdiction* to a federal agency." UTAH CODE § 24-4-114(1)(c) (emphasis added). As noted above, a federal seizure warrant cannot divest a state district court of *in rem* jurisdiction. *See supra* ¶ 47. Therefore, a transfer pursuant to a federal seizure warrant can only divest the state district court of *in rem* jurisdiction if the transfer is also accompanied by a state court order that permits it.